HENRY W. BROWN, Administrator, *vs.* JOHN S. TYLER & others.

Where a mortgage of real property is assigned as collateral security for a debt other than the mortgage debt, and foreclosed by the assignee, by whom the land is afterwards sold, the debt to secure which the assignment is made is not paid by the foreclosure, but only by the actual sale and conversion into money; and where the debt so secured is that of another person, the right of action of the mortgagee against him as for money paid to his use is not barred by the statute of limitations until the expiration of six years after such sale and conversion.

ACTION OF CONTRACT for money paid to the defendants' use by Mary Kinsley, the plaintiff's testatrix. Writ dated June 18th 1853. Answer, the statute of limitations.

At the trial before the chief justice, there was evidence tending to show that Mrs. Kinsley, holding a mortgage of real estate

from Samuel Gardner, one of the defendants, to secure his notes to her to the amount of four or five thousand dollars, on the 19th of September 1837, at his request, assigned said notes and mortgage to the People's Bank of Roxbury, who agreed in writing that upon payment of a note of $4,000, previously made by all the defendants to the bank, the assignment should be void, and the mortgage and notes be reconveyed to Mrs. Kinsley; that the bank entered to foreclose the mortgage on the 15th of April 1839, continued in peaceable possession more than three years, and on the 19th of March 1844, in consideration of the payment to them of the amount of the $4,000 note and interest, by Charles A. Winship, (who had purchased the equity of redemption,) sold to him all their interest in said note of the defendants, and in a judgment which they had recovered thereon, and also all their rights under said mortgage and possession.

The ground on which the plaintiff proceeded was, that Mrs. Kinsley had paid and extinguished a debt for which the defendants were liable, by applying her own funds, at the request of one of them, which was sufficient to bind them all, and therefore they were under an implied promise to pay her.

The opinion of the chief justice was thus expressed in his report to the full court: "I suppose the rule to be, that when a creditor receives of his debtor collateral security, consisting of chattels or choses in action or mortgaged real estate, after the chattels are sold and converted into money, or the debts and choses in action are collected and reduced to money, or the mortgaged real estate has become absolute in the mortgagee or assignee by foreclosure, which in law is taken to be equivalent to the payment of money and a discharge of the debt for which the mortgage is made, in either case it operates as a payment and extinguishment of the debt for the collateral security of which it is given. The giving it as collateral security for a particular debt was an appropriation to that debt; and when realized in money or money's worth, according to the terms on which it was given, it discharges it by operation of law, without the necessity of any receipt being given, or being carried to account in any book, or by any formal settlement of accounts

" If this principle be correct, then the foreclosure of the mortgage by the bank, the mortgage being held as collateral security, enured as a satisfaction of the note and the judgment in which it was merged, being the debt to secure which it was given.

" I was of opinion, that if the transaction in question could be considered at all as the payment of the debt by Mrs. Kinsley, or out of her funds, so as to give her a right of action against the parties to the note, as for money paid to their use, it was by the assignment of a security of her own ; and afterwards, on application of that security to the extinguishment of the debt, it was effected by operation of law by the foreclosure of the mortgage. That foreclosure took place on the 15th of April 1842, and then operated to extinguish the debt, and release the makers of the note from further liability. Then the right of Mrs. Kinsley accrued, if it accrued at all, to look to these defendants, and bring her action, as for money paid; and as she lived more than six years after that time, residing in the United States, and died in 1849, her right of action was barred by the statute of limitations."

On this opinion being expressed, a verdict was taken for the defendants by consent, subject to the opinion of the whole court upon the correctness of the above direction.

*S. Bartlett & G. S. Hale*, for the plaintiff, cited *Warren* v. *Emerson*, 1 Curt. C. C. 239; *United States* v. *Sturges*, 1 Paine, 525; *Burroughs* v. *United States*, 2 Paine, 569; *Moses* v. *Murgatroyd*, 1 Johns. Ch. 119; Story on Bailments, §§ 308, 320 & seq., 332, 342, 343; *Hoffman* v. *Johnson*, 1 Bland, 103; *Lee* v. *Baldwin*, 10 Georgia, 208; *Beall* v. *The Bank*, 5 Watts, 529; *Barrow* v. *Rhinelander*, 3 Johns. Ch. 614; *Clark* v. *Henry*, 2 Cow 324; *Cunningham* v. *Rogers*, 14 Alab. 147; *Harrison* v. *Mock*, 10 Alab. 185; *Garlick* v. *James*, 12 Johns. 146; *Wilson* v. *Little*, 2 Comst. 443, and 1 Sandf. 351; *Huntington* v. *Mather*, 2 Barb. 538; *Stearns* v. *Marsh*, 4 Denio, 227; *Ontario Bank* v. *Hallett*, 8 Cow. 192; *Spencer* v. *Harford*, 4 Wend. 384; *Charter* v. *Stevens*, 3 Denio, 35; *Kingston Bank* v. *Gay*, 19 Barb. 460; *Turner* v. *Fendall*, 1 Cranch, 117; *West* v. *Chamberlin*, 8 Pick. 336; *Briggs* v. *Richmond*, 10 Pick. 396; *Porter* v. *Blood*, 5 Pick. 54;

12 *

*Leland* v. *Loring*, 10 Met. 122 ; *Kemmil* v. *Wilson*, 4 Wash. C C. 308 ; *Bell* v. *Banks*, 3 Scott N. R. 506.

*C. B. Goodrich & J. W. May*, for the defendant, cited 2 Greenl. Ev. § 524 ; *Amory* v. *Fairbanks*, 3 Mass. 562 ; *Briggs* v. *Richmond*, 10 Pick. 396 ; *West* v. *Chamberlin*, 8 Pick. 336 ; *Hedge* v. *Holmes*, 10 Pick. 380 ; *Morgan* v. *Plumer*, 9 Wend. 287.

DEWEY, J.   The statute of limitations being pleaded in bar, the question arises, At what period of time may it properly be said that Mrs. Kinsley paid, on account of the defendants, the money demanded in this action ? If it be held that the foreclosure of the mortgage, transferred to the People's Bank by Mrs. Kinsley as collateral security for the debt of the defendants, was a payment by her as of that date, then the present claim is barred by the statute of limitations ; but if the payment is to be considered as having been made at the period of the sale of the foreclosed premises, two years later, then it is conceded that the action was instituted in due time by her administrator.

The facts stated show that Mrs. Kinsley, at the request of the defendants, or of some of them, who were indebted to the People's Bank on a note for four thousand dollars, agreed to transfer to the People's Bank, as collateral security for such note, a mortgage which she held against one of the defendants, taking back a written stipulation from the People's Bank that the mortgage was received by them for the purpose aforesaid, and that, upon payment of the note of the defendants, her assignment of the mortgage was to be void, and the notes and mortgage securing the same were to be reconveyed to her.

The case turns wholly upon the question what was the effect of the foreclosure of this mortgage thus transferred as collateral security for the debt of a third person.   Is the debt of such third person, to the amount of the notes secured by the mortgage, or the value of the land, if less than the notes, at once paid ; or does the party, holding such mortgage as collateral, hold the land after foreclosure, as he held the mortgage before, as assets to be applied whenever they can be made available ? ·

Now, while we fully assent to the doctrine contended for on

Brown, Administrator, *v.* Tyler & others.

the part of the defendants, as applicable to the ordinary case of mortgagor and mortgagee; and should hold that after a foreclosure by the mortgagee, it is to be taken as a payment of the debt secured by that mortgage, to the value of the land; yet it by no means follows that as between other parties, standing merely in the relation of pledgor and pledgee of said mortgage, the like consequence would follow. In general, where a party transfers to another goods, stocks or notes of hand, as collateral security for a preëxisting liability, the same are held in trust for the benefit of all parties; but only the actual proceeds realized from the sales, or payments, as the case may be, are to be accounted for. If, before the actual reduction of them to money, a rise in their value takes place, the assignor has the benefit of it. If a decline in price, the loss falls also on the assignor. It is only on the actual reduction of the pledged property to money, that the same is to be treated as a payment, and accounted for as such, and in the meantime the property is to be held as collateral. So also, we think, if a debtor, or a third person in his behalf, transfers a note secured by mortgage, and assigns both the note and the mortgage as collateral security for a debt; and the debt not being paid at maturity, the pledgee proceeds to enforce the collection thereof by a foreclosure of such mortgage, which is perfected by an entry and three years possession; as between pledgor and pledgee such foreclosure does not change the relation of the parties, nor does such foreclosure necessarily operate as a payment of the notes for which it was pledged as collateral.

In the opinion of a majority of the court, the foreclosure of the mortgage, by the party holding the same as collateral for the debts of a third person, did not, as respects himself and the party placing it in his hands, necessarily operate as a payment of the debt for which it was thus pledged. Such foreclosure was only one step in the process required to render available the pledge. The property, as well after foreclosure as before, was equally held in trust for the benefit of both pledgor and pledgee, and was to be disposed of for the benefit of all parties. On the one hand, the assignee, who held the same as collateral security, was not, in consequence of the foreclosure, required to take the

land in payment, if he was ready and willing to proceed to reduce the same to cash by a fair and proper sale of the same ; nor, on the other hand, would he be permitted to retain the same in his own right exclusively, regardless of what would be for the interest of the assignor.   The property was holden in trust, first to pay the debt for which it was pledged, and, after enough had been realized to pay this debt, the bank was to hold the surplus for the benefit of Mrs. Kinsley.   It continued thus to be holden after the foreclosure.   The foreclosure of the mortgage of Gardner was no more a payment of the debt of the defendants to the bank than the assignment of the mortgage.   The payment by Mrs. Kinsley is to be computed from the time the assets pledged to the bank were made available.   This was at a later period than that of the foreclosure, and so much later as to take the case out of the operation of the statute of limitations as a bar, upon the facts stated in the report of the case.

*New trial ordered.*