Joseph T. Manning *vs.* Christopher C. Shriver,
Agent.

*Promissory note—Collateral security—Authority to Sell—
Purchase by Pledgee—Good Faith.*

The maker of a promissory note pledged as collateral security for
the note certain shares of stock and a life insurance policy, and
agreed to maintain on demand ten per cent. margin collateral
security during the continuance of the note, "and on the non-per-
formance of this promise, or any part of it," he authorized the
payee to sell the collateral security at any broker's board, or at
public or private sale, at his option.    Held :

That the authority thus given to sell, upon "the non-performance
of this promise, or any part of it," applied as well to the non-
performance of the promise to pay the note at maturity. as to
the non-performance of the agreement to keep up the margin
when so demanded, and a sale of the stock by the payee on the
non-payment of the note, was not a conversion to his own use.

The note not having been paid the payee sent the pledged stock to
his brokers to be sold, with instructions that if any one bid for
it, not to sell it for less than $7.50 per share, which would be
about the amount due on the note.    The stock was offered for
sale at the stock board, and there being no bid for it, it was
bought in for the payee at one dollar per share.    The maker of
the note was utterly insolvent, and the stock had no value on

the day it was sold. He was notified that the stock would be sold, although the payee was authorized to sell without advertisement or notice. HELD:

That there was nothing to show a want of good faith on the part of the payee, in consequence of which the stock did not sell for its fair market value.

A pledgee may become the purchaser of the collateral security upon a sale of the same in payment of the debt, where the pledgor expressly authorizes him to do so.

APPEAL from the Superior Court of Baltimore City.

The case is stated in the opinion of the Court.

*Exception.*—At the trial the plaintiff offered the two following prayers:

1. That there is no evidence of any conversion by the plaintiff of the stock pledged as collateral security with the promissory note sued on in this case.

2. That as to the alleged conversion of the policy of insurance pledged as collateral security with said note, the defendant is not entitled to any recoupment by reason of said conversion, further than the credit of $447 on said note, if they find said credit, it being conceded by the defendant that $447 was the full value of said policy.

The defendant offered the two prayers following:

1. If the jury believe from the evidence that plaintiff, as bailee of defendant's stock, sold the same or caused the same to be sold for his own benefit, for $1.00 per share, when he knew he could obtain therefor $7.50 per share for the benefit of plaintiff, the defendant is entitled in this action to recoup the value of the 350 shares of stock so bought by plaintiff, at the rate of $7.50 per share.

2. That in selling defendant's stock the plaintiff was in duty bound to sell the same at the best possible price

obtainable therefor, even though he himself became the purchaser thereof.

The Court (RITCHIE, J.,) granted the instructions of the plaintiff, and refused to grant those of the defendant. The defendant excepted, and the verdict and judgment being against him, he appealed.

The cause was argued before ROBINSON, C. J., BRYAN, FOWLER, PAGE, McSHERRY, and BRISCOE, J.

*Frank Woods,* and *Charles J. Bonaparte,* for the appellant.

*Edgar H. Gans,* and *John T. Mason, R.,* (with whom was *Charles S. Hayden,* on the brief,) for the appellee.

ROBINSON, C. J., delivered the opinion of the Court.

The plaintiff loaned to the defendant $2500, for the payment of which he gave the following promissory note, and upon which this suit is brought:

"$2500.                    BALTIMORE, August 21, 1891.

"One year after date I promise to pay to C. C. Shriver, agent, or order at the bank, corner Lexington and Charles streets, Baltimore, twenty-five hundred dollars, with interest at (6%) six per centum per annum, for value received, having pledged with him as collateral security for this note, or for any other liability due to him, or to become due, or that may be hereafter contracted, four hundred and fifty shares (450) of the Loomis Improved Filter Company stock; also, policy for $10,000 in the Mutual Life Insurance Company of New York, No. 301,319; and I agree to maintain on demand ten per cent. (10%) margin collateral security during the continuance of this note, and on the non-performance of this promise or any part of it, I authorize

C. C. Shriver, agent, to sell the collateral security at any broker's board, or at public or private sale, at his option, without advertisement or notice to me, and with the right on his part to become purchaser thereof at such sale or sales freed and discharged of any equity of redemption; and I further authorize C. C. Shriver, agent, to use and transfer or hypothecate the same, they being required on payment or tender at maturity of the amount loaned to return an equal amount of said securities, and not the specific securities pledged.

"JOS. T. MANNING."

The note not being paid at maturity, the plaintiff sent for the defendant and demanded its payment, and this the latter told him it was impossible for him to do. The plaintiff then asked him to get some of his relatives to take up the note, and this he said he could not do. The plaintiff then offered to surrender to him the note provided he would transfer the 350 shares of stock to the plaintiff, and this the defendant refused to do. Thereupon the plaintiff notified the defendant that he would sell the stock the next morning at the stock board, and that he must protect himself.

The plaintiff sent the stock to Messrs. Brown & Lowndes to sell, with instructions that if any one bid for it, not to let it sell for less than $7.50 per share, which would be about the amount due on the note. The stock was offered at sale on the stock board, and there being no bid for it, Mr. Clabaugh bought it in for the plaintiff at one dollar per share.

The policy of life insurance had a cash value of $447, as ascertained from the agent of the company, and the plaintiff bought the policy for that amount, and gave the defendant credit for the same. The defendant admits that this was the full value of the policy, and that he claimed no damage for its alleged conversion.

Manning *vs.* Shriver.

The contention however is, that the plaintiff had no power or authority to sell the stock pledged as collateral security, and that the sale by him was a *conversion of the stock to his own use,* for which the defendant has the right to *recoup* in damages. The only authority, it is argued, to sell the stock, was upon the failure of the defendant to maintain or demand ten per cent. margin collateral security during the running of the note. The contract, it is said, contains two distinct promises,—one to pay the note at maturity, and the other to maintain the ten per cent. margin,—and "on the non-performance of this promise or any part of it," the parties meant the non-performance on the part of the defendant *to put up the margin of ten per cent.* and not the *non-performance of the promise to pay the note at maturity.* This, it seems to us, is drawing very fine sight on the terms of this contract. Grammatically speaking, it may be, that the language ought to have been "on the non-performance of *these promises," or either of them,* "or of this contract or any part of it." Construing however the entire contract, and not this isolated phrase, it is clear, we think, that this is what the parties meant. The same rule of construction which applies to all other contracts applies equally to the one now before us, namely, that it is to be construed according to its sense and meaning as ascertained, in the first place, from the language used, and which is to be understood in its plain, ordinary, and popular sense, unless it has in respect to the subject-matter acquired a peculiar sense distinct from the popular sense, or unless it plainly appears that the parties to the contract understood it in some other special and peculiar sense.

We are now dealing with a promissory note, to secure the payment of which at maturity, the defendant pledges certain collateral securities, and, in addition thereto, he agrees to maintain on demand a margin of ten per cent.

So there is not only a *promise to pay the note when due, but also a promise to keep up a certain margin,* and when the parties say that upon "the non-performance of this promise, or any part of it," the payee is authorized to sell the pledge, they meant upon the non-performance of either of the promise to pay the note at maturity, "or the non-performance of the agreement to keep up the margin when so demanded." We cannot suppose for a moment that the collateral security was pledged merely as a security for the maintenance of the margin. On the contrary, when the plaintiff upon the failure to pay the note at maturity told the defendant that he would sell the stock the next day at the stock board, the defendant replied, "Mr. Shriver, you have a perfect right to do that, and I can't object to your doing so." Thus showing plainly how the parties themselves understood the contract.

Then again it is argued, that the money loaned to the defendant was money belonging to Miss Semmes, and that the note was made payable to the plaintiff as agent, and it was as agent that he was authorized to sell and buy the stock, and thus holding a fiduciary relation to the parties, the plaintiff could not buy at his own sale. We fully agree with the counsel for the defendant as to the general rule of law relied on in support of this contention. We agree that one being a trustee, executor or agent, or in any other like fiduciary relation, will not be allowed to purchase property sold by him in that character. The rule is one of general application, and the reason of the rule is, that one will not be permitted to purchase an interest where he has a duty to perform inconsistent with the character of purchaser. We agree too that both upon reason and authority the relation of pledgor and pledgee comes within the operation of this rule. This we said in *Maryland Fire Ins. Co. vs. Dalrymple,* 25 *Md.,* 242. But

it is equally well settled that this rule does not apply where the pledgor expressly authorizes the pledgee not only to sell the pledge, but to purchase it in his own right. This, too, we said by implication at least in the *Dalrymple Case*, 25 *Md.*, 269, and it is fully sustained by direct decisions in other cases.

The purchase by a pledgee in such cases is exempted from the operation of the general rule upon the same ground that a mortgagee will be allowed to buy at his own sale, if the mortgagor so agrees. In this case it will be observed that the plaintiff was authorized to sell as agent, but at the same time he was authorized to buy in his own right. The money loaned belonged, it is true, to Miss Semmes, but the loan was made without her knowledge or authority, and for the security of which the plaintiff was himself individually responsible to her. He had no authority to buy the stock for her, but it was bought in his own name and for himself, and the right to buy it was one conferred upon him by the pledgor. Whether this right and the purchase under it is as between Miss Semmes and himself, affected or qualified in any manner by the relation in which he stood to her, is a question not properly before us in this case. We are now dealing with the case as between the plaintiff and defendant, and so dealing with it, the validity of the sale of stock is in no manner affected by the relation in which the plaintiff stood to the defendant.

Then again it is said there was a want of good faith on the part of the plaintiff in making the sale in consequence of which the stock did not sell for its fair market value. The only ground relied on in support of this contention is the fact, that plaintiff instructed the brokers not to let the stock sell for less than $7.50, if there shold be any bids to that amount by other persons, the with this instruction the stock was sold to the plaintiff at one dollar a share, there being no other bid. There

was nothing, however, unfair about the sale in this respect. The defendant himself, the maker of the note, was utterly insolvent, and the only security for its payment was the collateral security pledged by him; and this being the case, the plaintiff did not mean that any one else should buy the collateral, unless they bid enough to cover his claim, that is a sum sufficient to pay the note. He did not mean to say, that the stock *was in fact worth* $7.50 *a share*, nor did he mean to say that he would pay that sum for it in the hands of others. As a matter of fact, the stock had no value whatever on the day it was sold, there was not a single bid for it, except the bid made for the plaintiff. The defendant in his testimony says the company was in the most penniless condition; creditors were pushing us; we didn't even have money enough to pay the cartage of the castings on arriving here from the station to the shop; we had no money to pay mechanics, we hadn't money to pay any one, "nor had we any way to get it;" so being in this condition, the company on the 29th August, three days after the sale of the stock on the stock board, sold its entire assets for $5,000, a sum barely sufficient to pay its debts, leaving nothing whatever for the shareholders. The plaintiff was authorized to sell without notice at any broker's board or at public or private sale. He did, however, sell the stock at the stock board, and after notice to the defendant. The sale was, it seems to us, fairly conducted; and if the stock did not bring more than a dollar a share, it was because it had not in fact any market value. The plaintiff was, therefore, entitled to recover the balance due on the note, after crediting the same with the sale of the stock and the cash value of the life policy. There was no error therefore in granting the plaintiff's prayers, and in refusing the prayers offered by the defendant.

*Judgment affirmed.*

(Decided 13th March, 1894.)