COUNTY TRUST COMPANY ET AL. *v.* GEORGE H. STEVENSON ET AL.

[No. 26, April Term, 1936.]

*Decided June 10th, 1936.*

The cause was argued before BOND, C. J., OFFUTT, PARKE, SLOAN, and SHEHAN, JJ.

*William L. Rawls* and *William L. Marbury, Jr.,* for the appellants.

*R. C. Cole* and *S. Marvin Peach,* for the appellees.

SHEHAN, J., delivered the opinion of the Court.

George H. Stevenson and Rachael E. Stevenson, his wife, appellees, filed a bill in equity in the Circuit Court for Charles County against the County Trust Company of Maryland, formerly the Eastern Shore Trust Company, a body corporate, and the County Corporation of Maryland, a body corporate, and Joseph A. Wilmer, trus-

tee, and M. Natalie Digges, personal representative of W. Mitchell Digges, deceased, who was trustee, appellants.

This appeal is from a decree of the Circuit Court for Charles County enjoining the appellants from collecting, or taking any procedure towards collecting, a promissory note of the Oakoal Corporation, payable to the Eastern Shore Trust Company, dated June 20th, 1921, at four months, for $10,000. This note was executed by the Oakoal Corporation and indorsed by H. D. Flood, E. Brooke Lee, F. Brooke Matthews, Joseph A. Wilmer, and W. Mitchell Digges. The note was further secured by a deed of trust dated June 20th, 1921, from George H. Stevenson and wife to W. Mitchell Digges and Joseph A. Wilmer, trustees. This deed covered lands and premises situated in Charles County, Maryland, called "a part of Mt. Air," and containing about 202 acres of land.

In the deed it was stipulated that upon the sale of said lands and premises the proceeds arising therefrom, after deducting the costs incident to such sale and a reasonable commission to said trustees, should be applied as follows: "1st. To the payment of all indebtedness now legally due and payable by the said George H. Stevenson to the said The Eastern Shore Trust Company, as well as any renewals of said indebtedness, together with all interest thereon to the date of payment. 2nd. To the payment of the note of the Oakoal Corporation for the sum of $10,000.00, dated June 20, 1921, payable to the Eastern Shore Trust Company, and endorsed as herein set forth, or any renewal of said note, together with all interest thereon to the date of payment. 3rd. And the balance, if any there be, to pay to the said George H. Stevenson, his heirs or assigns."

The deed of trust authorized the trustees to rent, lease, or sell the property either at public or private sale upon such terms and for such sums as the trustees may deem advantageous. There are other provisions in the deed that are not important in the consideration of this case.

As further security on the said note of the Oakoal

Corporation to the Eastern Shore Trust Company, Edgar L. Culver conveyed by an absolute deed in fee simple, dated the 17th day of June, 1921, a farm located in St. Mary's County, containing about 102 acres of land. While absolute in form, this deed was intended as an obligation securing said indebtedness, and, like other pledges, "partakes of the nature of a mortgage, and is subject to an [the pledgor's] equity of redemption." *Tyng & Co. v. Woodward*, 121 Md. 422, 430, 88 A. 243, 246. It is charged that this deed was delivered at the same time as the note was made, and was accepted as security therefor.

On December 20th, 1922, W. Mitchell Digges, E. Brooke Lee, F. Brooke Matthews, and Joseph A. Wilmer made and delivered to the Eastern Shore Trust Company a note for $10,700. It is alleged that this note was for the same indebtedness as to principal and accrued interest thereon as the note above referred to; that H. D. Flood did not join in this note, he being dead at the time of its execution.

The note of June 20th, 1921, became due and was not paid. On neither of these notes were Stevenson or Culver principals or indorsers. For brevity herein the note of June 20th, 1921, for $10,000, by the Oakoal Corporation and indorsed as above stated, will be referred to or designated as the "Oakoal note."

The above recital of facts substantially describes the situation of the parties involved at the time of the financial embarrassment of the Oakoal Corporation. Out of failure to pay its note, and the abandonment of the enterprise for which this money was borrowed, arose the controversies which lead to the institution of this suit.

The Oakoal Corporation, of which Edgar L. Culver was president and George H. Stevenson was vice president and manager, was interested and engaged in the development of a fuel process which was unsuccessful. Both of these men were large stockholders in this corporation. The Eastern Shore Trust Company, holding this unpaid original note and the deed of the Culver property and the beneficial interest under the Stevenson deed

of trust, and the note of $10,700 of four of the indorsers of the original note, all of which were held as collateral, began to concern itself with the recovery on its collateral in order to liquidate the original indebtedness. The Culver property had been conveyed to it by a deed absolute in form, and was held for the sole purpose of securing the said $10,000 note. The Stevenson security, in the form of a deed of trust, was given to secure, not only the original note of $10,000, but any other indebtedness of Stevenson to the Eastern Shore Trust Company, of which there was a considerable amount. The express terms of this deed of trust have been previously stated. These two securities, according to the answer, were given because of the requirements of the indorsers of the note, and were not only to secure the original note, but were to secure these indorsers against loss because of their suretyship. According to the statements and allegations in the answer, the Stevenson security and the Culver security were equal and independent in their undertakings, and there is no distinction in the order in which the trust company might proceed to realize upon the Oakoal note.

Mr. and Mrs. Stevenson had subsequently given to the Eastern Shore Trust Company a mortgage dated August 21st, 1924, on this property for $12,000, to secure a loan of $9,500 and an additional loan of $2,500. With this situation concerning the collateral, it evidently seemed expedient to the Eastern Shore Trust Company to undertake to realize on the Culver property. The sale of the property presented less difficulties because of the situation with regard to the title and the fact that it was unencumbered, and, having equal standing with the Stevenson collateral, the company had the right to select either as a means of recovery. With the consent and approval of Mr. Stevenson and his wife, as alleged in the answer, the Eastern Shore Trust Company endeavored to sell or dispose of the Culver farm in order to liquidate the loan, and, after repeated efforts, the farm was sold and conveyed, on February 4th, 1924, to the

Washington Home Builders Association, Inc., for a consideration of $15,000, $1,000 of which was paid on account and the balance of $14,000 was secured by a note and mortgage of even date, to the Eastern Shore Trust Company and payable in three years. After holding this property, by virtue of the deed and mortgage, the association evidently became unable to perform its obligations with respect to the mortgage, and, by arrangement with the trust company, reconveyed the property to it on January 22nd, 1935, and took a release of the mortgage. The result of this transaction left the trust company, the indorsers on the note, the four makers of the note of $10,700, and Culver and the Stevensons, in substantially the same position with respect to the property and to the various obligations as they were in before this sale to the association, except as to the $1,000 paid on account by the association to the trust company. It is unfortunate that some definite statement was not made as to its application, but, in the absence of this, we must assume that it was applied or used in the manner ordinarily required as to proceeds of sale of collateral; that is, that it was credited on the obligation for which the farm was held as security. Assuming this to have been done, there is an outstanding indebtedness as to principal on the Oakoal note of $9,000.

We have now come to the real question in this case. Did the sale of the Culver property for $15,000, being in excess of the note of June 20th, 1921, for $10,000, under the facts above recited and set forth in the answer, and hence admitted to be true, constitute, first, a payment of the note? Second, did that sale and cash payment of $1,000, and the receiving of a mortgage of $14,000 for the balance, constitute a novation of the obligation of $10,000, and thus, in either event, release all parties to the original transaction, and particularly George H. Stevenson and his wife, of their obligation with respect to the Oakoal note, and any renewals thereof, and thereby discharge them from their obligation under the deed of trust?

If the transactions above recited between the Eastern Shore Trust Company and the Washington Homebuilders Association constitute either payment or a novation, then the obligations of the defendants in this suit are discharged and the appellees are entitled to the relief prayed; otherwise the bill should have been dismissed.

In considering this case, it must be borne in mind that it is being tried on bill and answer, consequently the facts alleged in the answer must be accepted as true, in so far as they are well pleaded. In the case of *Manor Coal Company v. Beckman,* 151 Md. 102, 133 A. 893, it is stated: "Ordinarily, when a case is heard on bill and answer, it is assumed that the well pleaded averments of the answer are true, but that only so much of the bill is true as the answer admits. *Miller's Equity, paragraph 255."* Well pleaded averments are defined as such as are susceptible of proof by legitimate evidence. In consequence of these rules in equity pleading, there cannot be any serious controversy as to facts, and this simplifies the problems presented. In numerous instances facts herein are stated and accepted as true because of this rule.

Further considering the facts in this case, we find that the note in question is still held by the trust company and carried as a subsisting obligation against all of those who originally became obligated thereon or in connection therewith.

There has been no variation in the terms of the Oakoal note or in the renewal thereof. The Oakoal Corporation and the trust company have had no dealings as to these notes, and, at the present time, the original note is unpaid except as to $1,000. The note of $10,700 is also held by the trust company and is unpaid. The Stevenson deed of trust is outstanding and unsatisfied and the Culver property is in the hands of the trust company, having been reconveyed to it. All of these obligations are held by the trust company for the payment of the Oakoal note and, as to the balance, for the use of Edgar L. Culver, Mr. and Mrs. Stevenson, the indorsers on the

$10,700 note, and the indorsers on the original note according to their respective interests and obligations.

We hold that the Eastern Shore Trust Company could not profit by this conveyance or reconveyance of this collateral. It is obvious that the effort by the Eastern Shore Trust Company throughout these transactions was only designed to recover on its collateral, and in that effort it failed. There is no intimation of bad faith or a want of judgment and discretion on the part of the trust company in any of these proceedings. It cannot be rightfully contended that, had the mortgage of the association for $14,000 been paid, Mr. Culver would not have been entitled to the difference between this payment and the amount due on the Oakoal note, and, if this is true, then the trust company only held the mortgage as collateral, with the usual consequences.

A pledge cannot be taken as, or converted by the pledgee into, a payment of the debt, without an express agreement clearly made between the pledgor and the pledgee, and no such agreement was ever made between any one in interest and the trust company. *Jones on Collateral Securities*, sec. 687; *Manning v. Shriver*, 79 Md. 41, 46, 28 A. 899. Therefore the Culver farm, either directly or indirectly, cannot be appropriated to the payment of the Oakoal note, and the answer charges in substance that no such thing was ever done, or attempted to be done, by the trust company.

The proceeds from the sale of the farm or from the sale of the mortgage on that farm, had payment been made therefor, less the amount due on the Oakoal note, would have been held by the Eastern Shore Trust Company for the account or use of Mr. Culver. The collateral at all times has remained practically the same, because the mortgage was on the entire Culver property, and in that security the relative or respective rights of the trust company and Culver were the same as in the farm itself, and, when the farm was returned and the mortgage was canceled, these rights still were preserved by operation of law. The trust company could not deal with the Culver

property to its own gain or advantage above the amount due to it. *Maryland Fire Ins. Co. v. Dalrymple,* 25 Md. 242, 267, 89 Am. Dec. 779.

A pledgee may not speculate in his collateral, for the status of trustee is imposed upon him in regard to such pledge. "In general, where a party transfers to another notes, goods, stocks, or notes of hand as collateral security for a preexisting liability the same are held in trust for the benefit of all parties; but only the actual proceeds realized from the sale or payments, as the case may be, are to be accounted for. * * * It is only on the actual reduction of the pledged property to money that the same is to be treated as a payment and accounted for as such, and in the meantime the property is to be held as collateral." 21 *R.C.L.* p. 666.

The action of the trust company in selling the collateral was the exercise of a right that it had, but could only be done for the purpose of the payment of the money that the collateral was intended to secure; and the property could not be, directly or indirectly, transferred to the pledgee as payment of its claim, because this would defeat any equity the pledgors or others might have in the property; nor can the pledgee purchase the property pledged to it. *Maryland Fire Ins. Co. v. Dalrymple, supra; Manning v. Shriver,* 79 Md. 41, 46, 28 A. 899, supra.

When the trust company, acting in good faith, with the approval of Mr. Stevenson and his wife (as alleged in the answer) undertook to sell this property to the association and to thereby liquidate the Oakoal note, but because of unfortuitous circumstances the note was not and could not be so liquidated, the transaction only amounted to an unsuccessful effort to realize on the security and not as a payment or a novation of the note held by the trust company, and the reconveyance of the property was for the preservation of the pledge. Mr. Stevenson and his wife, having participated in this effort, cannot be heard to complain when the results were not as they expected, nor such as the trust company had endeavored to accomplish.

As to the note of $10,700 given by four of the five original indorsers, it is specifically alleged that this was not accepted or intended as a substitution, novation, or payment of the original note, but only as an evidence of, and security for, the original debt.

To further strengthen this position, it is alleged, and must be accepted as true, that the interest on the indebtedness evidenced by the Oakoal note, or its renewal, has been paid from time to time, and this would certainly amount to a recognition that the original obligation was an outstanding and subsisting liability and an asset of the trust company.

These facts are inconsistent with the theory of either novation or payment, for intentions, as well as actions, of the parties enter into questions of novation and payment, and, taking the allegations as true, they negative the fact that the Oakoal note, or the renewal of it, have been paid or other obligations have been substituted for it.

It is contended that the execution and acceptance of the note of $10,700 amounted to a payment, or a novation, of the Oakoal note. The answer to this contention is stated above. The law does not support the position taken by the appellees. A novation cannot be effected unless supported by the intention of all the parties to the original contract. The answer specifically denies such an intention or any agreement with respect thereto, and this is supported by the fact that the trust company could not be presumed to have surrendered its claim against all of its collateral, and against the estate of H. D. Flood, who did not join in the note, and accept this note as payment or as a novation when the security on that note is only a part of that already held. The note was executed by some, but not all, of the indorsers on the original note, and therefore is not in "equal degree" with the existing note or its renewal.

In *Philadelphia & Reading Coal Co. v. Willinger*, 137 Md. 46, 51, 111 A. 132, 134, this court said: "The decisions in this state and in other jurisdictions are uniform

in holding that the acceptance of a new note or security, of equal degree, for an existing note, is not in itself a payment or extinguishment of the original debt for which it was taken, in the absence of an agreement to that effect." See, also, *Jones on Collateral Security*, sec. 688.

The contention that this note is a novation of the original note is not tenable. There are no facts in the answer that justify this assumption; in fact, the answer specifically denies that this note was taken as a payment or as a novation. The intention of all the parties largely governs in determining whether there has been a substitution or a novation of one debt for another. The law is well stated in this respect in 20 *Ruling Case Law*, p. 366: "In order to effect a novation there must be a clear definite intention on the part of all concerned that such is the purpose of the agreement, for it is a well settled principle that novation is never to be presumed. The intention of the obligor that the existing debt should be discharged by the new obligation must be concurred in by both debtor and creditor. The point in every case then is, did the parties intend by this agreement to extinguish the old debt or obligation and rely necessarily on the new, or did they intend to keep the old alive and merely accept the new as further security, and this question of intention must be decided from all the circumstances." See 29 *Cyc.* 1140; *United States v. Grover* (D.C.) 227 Fed. 181; 8 *Corpus Juris*, 569.

The above citations apply with equal force to the claim that the dealings between the trust company and the Washington Home Builders Association constitute either a novation or a payment of the Oakoal note, and nowhere in the record does it appear that it was the intention of the trust company or the Oakoal Corporation to make this substitution of the obligation; in fact, there seem to have been no dealings between them whatsoever after the renewal of the Oakoal note. The case of the *Baltimore Academy of the Visitation v. Schapiro*, 169 Md. 332, 181 A. 731, is urged as authority for the contentions of the appellees, but the facts in that case differ

widely from the facts in the instant case. General principles as to the law of novation are of course the same in all cases of this character, but, when applied to facts that are dissimilar, they bring different conclusions.

The general statement of the law in that case, as well as in the case of the *District National Bank of Washington v. Mordecai*, 133 Md. 419, 105 A. 586, 588, is that: "A 'novation' is a new contractual relation, and contains four essential requisites: (1) A previous valid obligation; (2) the agreement of all the parties to the new contract; (3) the validity of such new contract; and (4) the extinguishment of the old contract, by the substitution for it of the new one."

Testing the facts in this case by these rules, it is obvious that the first test is satisfied by the fact that the Oakoal note and its renewal was a valid obligation, but as to the second test there is no agreement in respect to this substitution by the Oakoal Corporation and the trust company or other persons to the original undertaking, and it has been shown that the old contract (the Oakoal note) or its renewal has not been extinguished. The reasons are given above and need not be repeated, except to indicate that these notes were carried on the books of the trust company as outstanding obligations to it and are one of its assets. It is also our opinion that the Oakoal note cannot be extinguished through the dealings of the above association and the trust company, because, as has been previously stated, the trust company cannot transfer its collateral to itself, either directly or indirectly, as payment for its debt, without an express agreement between the parties, and no such agreement has been made. Therefore we have arrived at the conclusion that there has not been a novation or payment of the note of June 20th, 1921, referred to as the Oakoal note, or the renewal thereof. Nor did the transaction or dealings of the Washington Home Builders Association, herein called the association, with the Eastern Shore Trust Company or other appellants, constitute a payment of that note or its renewal.

For the reasons stated, the decree in this case must be reversed.

*Decree reversed, and case remanded for the passage of a decree in conformity with this opinion, with costs to the appellants.*

OFFUTT and PARKE, JJ. dissent.