PENNSYLVANIA AVENUE FEDERAL SAVINGS &
LOAN ASSOCIATION *v.* MORRIS FEDDER

[No. 61, April Term, 1938.]

*Decided June 14th, 1938.*

The cause was argued before BOND, C. J., URNER,

Offutt, Parke, Sloan, Mitchell, Shehan, and Johnson, JJ.

*J. A. Dushane Penniman,* for the appellant.

*W. Conwell Smith,* for the appellee.

Johnson, J., delivered the opinion of the Court.

This is an appeal from a decree of the Circuit Court of Baltimore City providing that appellant pay unto Morris Fedder the sum of $800.00, in addition to certain dividends upon said sum from October 1st, 1934, to January 1st, 1938. The facts, which are not disputed, are as follows:

In December, 1929, Morris Fedder, the appellee, sold unto Tony Lordi and Mary Lordi, his wife, a leasehold property, known as No. 1816 East Fayette Street, in Baltimore City, and the purchasers, who, in order to make settlement, required the sum of $3510.00, applied to the Pennsylvania Avenue Permanent Building and Loan Association of Baltimore City for a loan in this amount, to be secured by a mortgage upon the property. The association, deeming the security inadequate, declined to lend the amount applied for, unless Lordi and wife could furnish additional security in the sum of $800.00, to guarantee payment of mortgage dues in double that amount. Under such circumstances Fedder agreed to guarantee the payment of said sum of $800.00 and pledged $6^{20}/_{130}$ paid up shares of stock which he owned in the association for that purpose. The pertinent portions of the agreement under which the pledge was made are as follows:

"Now, therefore, This Agreement and Guaranty, Witnesseth, That in consideration of the premises and the sum of one dollar, the said Pledgor do hereby pledge and hypothecate to said Pledgee said $6^{20}/_{130}$ shares of stock of said Pledgee, as shown on the pass book issued by said Pledgee and now numbered ———— (issued in the name of said Pledgor) as guaranty for said loan to said

Mortgagors, to the extent of the sum of Eight Hundred ($800.00) dollars, until the sum of Sixteen Hundred Dollars shall have been paid thereon in dues and the principal of said loan reduced thereby to that extent, with no default in any of the provisions of said Mortgage in the meantime and over and above all accrued expenses on said property and interest and fines, if any, due on said mortgage debt.

"It is further agreed, That should there be default in any of the conditions or covenants of said Mortgage and the said Mortgage be foreclosed and the mortgaged premises or property sold for a less sum than sufficient to net said Pledgee the amount of its claim under said Mortgage so foreclosed, then said Pledgee shall have full power and is hereby authorized and empowered to take and appropriate from the amount to the credit of said Pledgor, on said Pass Book No. ——— without further notice to or order from said Pledgor, an amount sufficient to make good any deficiency under said foreclosure up to the amount of Eight Hundred ($800.00) dollars and to deduct said amount from said pass book and from the account of said Pledgor on the books of said Pledgee the same as if withdrawn at the request of said Pledgor.

"And it is further agreed, That no extension of time given by said Pledgee to said Mortgagor in any of its payments under said Mortgage shall invalidate this Agreement."

In pursuance of this pledge, the mortgage loan was made and for some time thereafter payments were made upon the mortgage with reasonable regularity. Fedder, the pledgor, at infrequent intervals called upon the association and collected the interest upon the shares thus hypothecated by him.

However, in October, 1935, default having been made by the mortgagors in the payments due by them under the terms of the mortgage, the building and loan association instituted proceedings to foreclose the mortgage, with the result that trustees, who were duly appointed, sold the property by public auction, after advertisement

in accordance with the provisions of the decree, for the sum of $1300.00. The purchaser was the building and loan association. The sale was ratified, and subsequently the auditor stated an account which showed that the total amount due on the mortgage, including interest down to the date of ratification, was $2117.99. The audit, which on January 7th, 1936, was finally ratified and confirmed, also showed that the sum of $1093.43 was left for distribution to the building and loan association after payment of costs incident to foreclosure and other items having priority to the mortgage, and that a balance of $1024.56 was still due and owing the building and loan association by the mortgagors. The association, not having been paid the sum of $1600.00 upon the mortgage principal, took from appellee's account the sum of $800.00 to make good that deficiency to the extent of the guaranty.

The trustees, by deed of February 27th, 1936, conveyed the property to the purchaser, who on the same date conveyed it to Tony Lordi, and accepted from him a purchase money mortgage thereon for $2200.00, the entire purchase price having been $2246.98, which was the amount due by him under the old mortgage, plus foreclosure costs. By reason of various payments made upon the new mortgage, the balance due thereon as of January 1st, 1938, was $1853.67.

It further appears that on September 10th, 1931, Mary Lordi filed a bill for divorce *a vinculo* against Anthony Lordi in the Circuit Court No. 2, Baltimore City, charging him with adultery and cruelty and compelling her to leave his home at 1816 East Fayette Street; that Lordi filed an answer admitting the separation, but alleging that the wife had deserted him without just cause. No further proceedings appear to have been taken in the case, but Lordi and his wife are still living separate and apart. A merger was effected between the Pennsylvania Avenue Permanent Building and Loan Association of Baltimore City and the Pennsylvania Avenue Federal Savings and Loan Association, the corporation last named

having taken over the assets and assumed the liabilities of the former. Between October 1st, 1934, and January 1st, 1938, regular dividends were declared by the building and loan association upon its paid up or free shares of stock, from which the sum of $43.32 became due Fedder as of January 1st, 1938. That amount had not been paid him when the decree here appealed from was passed.

The bill of complaint filed by Fedder alleged many of the facts above recited, but contained no allegation which directly or impliedly charged appellant with any fraud whatsoever in connection with the foreclosure of the mortgage and the purchase and resale of the property, nor did it charge the association and Tony Lordi with any fraudulent scheme, intent, or purpose to effect the foreclosure, and thereby transfer the title from himself and wife to him. Moreover, during oral argument before this court, Fedder's solicitor disclaimed any intention of imputing fraud to them. The prayers of the bill were: (a) That the association be declared to hold the $2200.00 mortgage from Tony Lordi as trustee for the plaintiff to the extent of $800.00; (b) that it be required to account for and pay over to him any and all sums of money received on account of the Lordi mortgage on the premises, both principal and interest, not exceeding $800.00 and interest; and (c) for general relief. That proceeding resulted in the decree hereinbefore referred to.

Since the chancellor filed no written opinion in the case, this court is without the benefit of his views which occasioned the decree. However, from oral argument before this court, and from his brief, we understand that appellee relies on two propositions to sustain the decree, viz.: (1) That the guaranty agreement between Fedder and the association should be construed as a plan on Fedder's part to indemnify the association only in the event that the latter sustained an ultimate loss, or, stated differently, that the deficiency contemplated by the guaranty was not determinable by the foreclosure proceeding

and subsequent ratification of the audit; (2) that in any event the association should in equity be regarded in purchasing the property as having acted for the benefit of all the parties, and must, therefore, account to appellee for any profit over its own claim realized from a resale, because he asserts that pledged property is a trust for the benefit of all parties to the contract.

In considering the first of these contentions, recourse must be had to the phraseology of the guaranty agreement between Fedder and the association. The language of that instrument is clear and unambiguous, and in our judgment means that Fedder, as a guaranty that the mortgagors would by payment of dues upon the mortgage reduce the principal to the extent of $1600.00, pledged certain free shares of the association having a value of $800.00. It was further provided that should the mortgage become in default and be foreclosed, and should the property sell for a sum insufficient to net the association the amount of its mortgage claim, the latter was authorized and empowered to "take and appropriate from the amount of the pledgor's credit, without further notice to or order from" him, a sum sufficient to make up any deficiency under the foreclosure up to the amount of the $800.00 guaranty, and to "deduct said amount from said passbook and from the account of said pledgor on the books of the said pledgee the same as if withdrawn at the request of said pledgor." In view, therefore, of the plain, simple, and specific terms used by the parties, no doubt can arise or exist as to its meaning. The deficiency contemplated was the deficiency ascertainable as a result of the mortgage foreclosure. As previously noted, this deficiency exceeded $800.00, the amount of the guaranty, and it was this sum which the association appropriated under the agreement. Obviously, the court cannot make a new agreement for the parties, but is limited to a consideration of the one which they themselves made. It, therefore, becomes obvious that the first of these contentions is without merit.

In support of the second contention, that the associa-

tion should be regarded as having purchased the property for the benefit of all the parties and, therefore, accountable for any profit from the transaction over and above its own claim, we are referred to *Brown, Admr., v. Tyler*, 8 Gray 135, 74 Mass. 135; *Hampton v. Phipps*, 108 U. S. 260, 2 S. Ct. 622, 27 L. Ed. 719; and *Jones on Collateral Securities*, ch. 13, par. 514; also to the cases of *Hooper v. Central Trust Co.*, 81 Md. 559, 32 A. 505; *Manning v. Shriver*, 79 Md. 41, 28 A. 899; *County Trust Co. v. Stevenson*, 170 Md. 550, 185 A. 435; and *Maryland Fire Ins. Co. v. Dalrymple*, 25 Md. 242. A casual examination of those decisions, except the one last cited, demonstrates their inapplicability to the situation here under consideration, because each decision of necessity was based upon the contract of bailment and whether the pledgee was acting within it.

Thus, in *Maryland Fire Ins. Co. v. Dalrymple, supra,* the company had been sued for the wrongful sale and conversion of certain shares of stock pledged by the plaintiff to secure the repayment of a loan made him. It was contended that before default had occurred in the payment of the money thereby secured, the defendant caused the stock to be sold publicly, but the proof was otherwise, this court saying: "But it appears from the proof that before that time, in the spring of 1862, the defendant caused the stock to be sold publicly at the Board of Brokers, and it was transferred to the several purchasers. What was the effect of those sales? Having given notice to pay the loan in November, 1860, the defendant was not bound to keep the pledge; the attempted sale of the 20th of November being inoperative, and the plaintiff continuing in default, the power to sell, conferred by the contract, still continued, and was, in fact, executed by the sales made in 1862. As we have already said, no further notice was required by the contract, nor can any valid objection be made to the place and mode of sale, the same not being impeached on the ground of unfairness or bad faith. By those sales the bailment was ended, and being made, as we have

said, in the lawful and valid exercise of the power of sale, there was no violation of the contract on the part of the defendant, or any tortious conversion of the stock, and, therefore, the plaintiff was not entitled to recover in this form of action; and the fifth prayer of the defendant ought to have been granted."

See, also, 1 *Bogert on Trusts and Trustees,* sec. 11, page 26, where the author unqualifiedly states that bailment is not a fiduciary relation, and distinguishes between bailees and trustees.

The *Dalrymple* case, *supra,* is in many respects analogous to the one here presented, for in this case the deficiency was established by the ratification of the audit made pursuant to the foreclosure sale, and certainly, in view of the express authorization contained in the guaranty agreement, appellant acted within its terms in applying to its own use the $800.00, for, as in the *Dalrymple* case, *supra,* no notice was by the contract required to be given him. Again, as in that case, no claim is made that the transaction was tainted by bad faith, unfairness or fraud, but on the contrary appellee denies the existence of any such motives. In the absence, therefore, of any allegation or proof that the association and Tony Lordi entered into a scheme for foreclosure of the mortgage in order to defeat the claim of the wife, this court would not, simply because of the fact that Lordi had repurchased the property from the association, be justified in holding that any such scheme existed, nor is the circumstance that appellant, by reason of the sale to Lordi, has made a profit equal to the $800.00 it took from Fedder's account, a matter that authorizes this court to deprive it of that profit under the facts before us.

There is some suggestion that, since appellant took the $800.00 from the Fedder account, the pledgor thereby lost his right to a deficiency decree, without which there is no possible manner in which Fedder may now be entitled to subrogation against Lordi and wife to the extent of the $800.00. Assuming, without deciding, that this would result, the answer to this contention is found in

the agreement between Fedder and the association, under the terms of which, in view of the facts, the association became entitled to the $800.00 without securing a deficiency decree. Furthermore, under the pleadings and facts in this case, no argument becomes necessary to refute the idea that liability attaches to the association simply because it sold the property to one of the mortgagors, for its good faith and the fairness of the sale being unquestioned, it certainly had as much right to sell the property to Tony Lordi as to any other person.

Upon these considerations it must be held that the chancellor was in error in decreeing that appellant account to Fedder for $800.00, with dividends upon the same at the rate declared by the association upon such free shares from October 1st, 1934, to the date of the decree. However, since it is shown that there was due appellee, as of January 1st, 1938, $43.32, representing dividends declared upon such shares prior to the time the mortgage deficiency was established, the decree should, to the extent of requiring appellant to account for that sum, be affirmed.

> *Decree affirmed in part and reversed in part and cause remanded for decree in conformity with this opinion, with costs to the appellee.*

URNER, J., dissents as to reversal.