**UNITED STATES of America**
v.
**James Lamar JONES.**
**Civ. A. No. 643.**

United States District Court
M. D. Georgia,
Columbus Division.
Sept. 3, 1957.

Robert B. Thompson, Asst. U. S. Atty., Macon, Ga., for plaintiff.

Vincent P. McCauley, Columbus, Ga., for defendant.

BOOTLE, District Judge.

The plaintiff sues the defendant for recovery of a sum it claims to have had to pay as guarantor on a loan obtained by defendant pursuant to Title III of the Servicemen's Readjustment Act of 1944, as amended, Title 38 U.S.C.A. § 694. For disposition now are cross motions for summary judgment. By pleadings, answers to interrogatories and affidavits, the following facts are made plainly to appear without controversy or issue.

For the plaintiff, this showing is as follows. The defendant, a veteran, procured a loan from the Georgia Loan and Trust Company, Macon, Georgia, in the

sum of $5,750 and, upon his application, said loan was guaranteed by the Government to the extent of fifty per cent, or $2,875, the loan being evidenced by a promissory note and secured by a security deed covering a house and lot. The note and security deed were subsequently transferred to the Reconstruction Finance Corporation. After default by defendant, the Reconstruction Finance Corporation duly and regularly and in accordance with the terms and provisions of the security deed foreclosed the same and sold the house and lot at public auction before the courthouse door of Muscogee County Superior Court on November 7, 1950 for the sum of $4,228. The Reconstruction Finance Corporation was the successful bidder. The foreclosure sale failed to the extent of $865.23 bringing enough money to pay the guaranteed debt. Accordingly, the Reconstruction Finance Corporation made claim against the United States of America, through the Veterans Administration, under said guaranty for the said sum of $865.23, which amount was, accordingly, paid by the United States to Reconstruction Finance Corporation on February 3, 1951. It is for this amount, plus lawful interest from February 3, 1951, that this suit is brought in three counts, count 1 resting upon a claimed right of subrogation, and counts 2 and 3 resting upon a claimed right of indemnification as to the sum so paid out by plaintiff under its obligation as guarantor. Plaintiff's motion for summary judgment is upon counts 2 and 3.

For the defendant, the showing is as follows. Sometime after the foreclosure sale, the purchaser at said sale, Reconstruction Finance Corporation, conveyed the house and lot to the Veterans Administration for an undisclosed consideration, or purchase price. Thereafter, the Veterans Administration sold the said property to a Mrs. Wells for $5,200, being made up of a $500 down payment and a mortgage loan for $4,700. Thereafter, and on or about February 9, 1952, Mrs. Wells sold to A. J. (Jack) Hayes her equity in said property, Hayes assuming

an existing loan to the Veterans Administration on which he has kept payments current at $41.86 monthly. At the time the loan was made by Georgia Loan and Trust Company of Macon, Georgia, the defendant resided in Columbus, Georgia and had his dealings with the Jefferson Company, which was the Columbus correspondent for the Georgia Loan and Trust Company. When defendant's loan became in arrears, Mr. Jack Jefferson, of the Jefferson Company, went out to defendant's home to see what defendant could do about it. Jefferson told defendant that he had a letter from the Georgia Loan and Trust Company about the loan. While they were talking about it, defendant asked Jefferson if Jefferson could sell the house for defendant. Jefferson and a salesman with him then told defendant that when the house was sold through foreclosure the defendant need not worry and that defendant's interests would be protected. Mr. Jefferson is now deceased and the defendant does not recall the identity of the salesman. Jefferson and the unidentified salesman then and there advised defendant that it would not be necessary for him to appear at any sale and that they would see to it that the proceeds of the sale would extinguish any indebtedness on defendant's part. The defendant alleges in his answer that all of these actions were done willfully and with knowledge upon the part of the holder of the security deed and note with the intention of chilling the sale "all of which constitutes a fraud upon the defendant, which said fraud the defendant herein asserts was known or upon reasonable investigation could have been known by the plaintiff herein. Further that the disparity in the procedure of the sale, and the value of the house was known to the plaintiff because of certain appraisals made by the Veterans Administration at the time the note referred to in the complaint was guaranteed by the plaintiff."

A guarantor is entitled to indemnity from his principal for any loss sustained by virtue of the contract of guaranty. The law raises an implied

promise on the part of the principal to reimburse him and the guarantor has a cause of action for such reimbursement. 38 C.J.S. Guaranty § 111, page 1298. Furthermore, the regulations promulgated by the Administrator of Veterans Affairs, by authority conferred by Title 38, Section 694d(a), U.S.C.A. expressly provide:

"Any amounts paid by the Administrator on account of the liabilities of any veteran guaranteed or insured under the provisions of the Act shall constitute a debt owing to the United States by such veteran."

Title 38, Code of Federal Regulations (1949 Edition), Section 36.4323.

As was said in the case of the United States v. Henderson, D.C.Iowa, 121 F. Supp. 343, 344:

"The language of this provision is clear and there can be no question therefrom of the intent of the Congress to make any payments made by the Government under the guarantee of the Act an enforceable demand until full satisfaction is obtained. Foreclosure proceedings could only extinguish the debt, (as the entire loan could be a potential debt under the regulation), for that amount credited on the loan as a result of such action."

 As I see it, the plaintiff is clearly entitled to a summary judgment unless it could be said, as defendant contends, that the plaintiff is in some way bound by the statement made by Jefferson to the defendant that defendant need not attend the sale and that he, Jefferson, would see to it that the sale brought enough to pay the debt; or unless it could be said, as the defendant contends, that the Veterans Administration after it purchased the property from the purchaser at the foreclosure sale was under obligation to account to defendant for any profit it may have made or may make in the future by reason of its ownership of said property. Bearing in mind that Jefferson merely represented his company, which company was only the cor-

respondent of the Macon lender, and no authority on the part of Jefferson to speak for or bind the Government being alleged or shown, I fail to see that the plaintiff is to any extent chargeable with the statements or promises made by Jefferson. While the defendant's answer alleges that this conduct on Jefferson's part constitutes a fraud upon the defendant, he nowhere alleges that any Department of the Government was a party to such fraud, or participated therein, his allegation being simply that "which said fraud the defendant herein asserts was known or upon reasonable investigation could have been known by the plaintiff herein." Merely alleging that a party could have discovered a fraud falls short of alleging knowledge of, or participation therein. Even if Jefferson had claimed authority to bind the Government, the defendant would have dealt with him at his own risk as to whether or not the claimed authority existed. United States v. Cahoon, D.C.E.D.N.C., 151 F.Supp. 584.

 As to the contention that the Veterans Administration has made a profit as a result of its acquisition of the property from the purchaser at the foreclosure sale and its subsequent sale of the property to Mrs. Wells, it would seem to be sufficient for the present inquiry to point out that the defendant, through his showing in opposition to plaintiff's motion for summary judgment, has created no issue of fact on this score. All that appears from defendant's showing is that at foreclosure the property sold for $4,228 to Reconstruction Finance Corporation, that thereafter for some totally undisclosed consideration the Veterans Administration acquired the property from Reconstruction Finance Corporation and thereafter sold the same to Mrs. Wells for $5,200. Not knowing what the Veterans Administration paid the Reconstruction Finance Corporation for the property and not knowing, for instance, what taxes were paid by either the Reconstruction Finance Corporation or by the Veterans Administration, or what expenses were incurred by either of these companies in connection with their re-

spective sales only the wildest guess can be made by the defendant or by this Court as to whether or not the Veterans Administration made any profit or incurred any loss out of its acquisition and disposal of the property. Suffice it to say that if the defendant would rely upon this possible defense, the burden is upon him to create an issue of fact with respect thereto. This he cannot do by the affidavit of counsel for the defendant to the effect that the cancelled revenue stamps on the deed from the Veterans Administration to Mrs. Wells indicates that said property was sold for an amount in excess of $5,000 (the $5.50 cancelled stamp indicating, in fact, that the consideration was not in excess of $5,000) "which amount *it is believed* was received by the Veterans Administration, the particular agency of the United States Government which is prosecuting the claim against the defendant in the present instance. That the receipt of said amount by the V. A. represents a recoupment or reimbursement in full of any amount here claimed by the United States Government." While without reference to the revenue stamps Mrs. Wells' affidavit shows that she paid $5,200 for the property, there still is no showing as to what the Veterans Administration paid for it or had in it. While this is not in affidavit form and therefore is not to be considered as evidence upon the determination of these motions, counsel for the Government in their most recent brief state it as a fact that the Veterans Administration had in the property, at the time it sold it to Mrs. Wells, including the guaranty payment here sued for, a total of $5,462.63 and actually sold it to Mrs. Wells for $4,750 rather than $5,200, and that the Veterans Administration has thus suffered an out-of-pocket loss in the sum of $712.63. If said figures are correct with respect to what the Veterans Administration had invested in the property, and

if Mrs. Wells' affidavit as to her purchase price of $5,200 is correct, the Veterans Administration would still have an out-of-pocket loss of $262.63.

■ But as I see it, whether or not the Veterans Administration has made a profit as a result of its purchase of this property from the Reconstruction Finance Corporation, or whether it should make such profit in the future is immaterial to the present inquiry. The plaintiff's loss on its guaranty agreement was determined when the foreclosure sale occurred and resulted in a deficit of $865.23 and when the payee of the note demanded and received payment from the Veterans Administration of said sum. If the Veterans Administration should incur an additional loss by reason of its purchase of the property from the purchaser at the foreclosure sale it could hardly be said that as guarantor it could recover from the defendant such additional loss in addition to the $865.23 sued for. Likewise, it would not be responsible to the defendant for any profit on such subsequent and independent transaction. See in this connection, 38 C.J.S. Guaranty § 111, page 1298; 24 Am.Jur., page 875, Guaranty, Section 4, page 955, Guaranty, Section 123; 59 C.J.S. Mortgages §§ 518, 599, pages 848, 1044; 37 Am.Jur., page 188, Mortgages, Section 783.

■ When a summary judgment movant makes a convincing showing that genuine issues of fact are lacking, the adversary must adequately demonstrate by receivable facts that a real, not formal, controversy exists. Bruce Construction Corporation v. United States, 5 Cir., 242 F.2d 873; Reynolds v. Maples, 5 Cir., 214 F.2d 395(10), and Surkin v. Charteris, 5 Cir., 197 F.2d 77.

Accordingly, plaintiff's motion for summary judgment is granted and counsel for plaintiff may prepare and present an appropriate judgment.