Arthur Earl McKNIGHT, Appellant,

v.

UNITED STATES of America, Appellee.

No. 15853.

United States Court of Appeals Ninth Circuit.

Sept. 22, 1958.

Robert H. Green, Los Angeles, Cal., for appellant.

542

George Cochran Doub, Asst. Atty. Gen., Robert S. Green, Morton Hollander, Attys., Dept. of Justice, Washington, D. C., Laughlin E. Waters, U. S. Atty., Los Angeles, Cal., for appellee.

Before ORR, CHAMBERS and BARNES, Circuit Judges.

BARNES, Circuit Judge.

This is a civil suit brought by the government against a World War II veteran to recover a sum of money on a Loan Guarantee the veteran-defendant had executed in connection with a loan obtained from the Porterville Mutual Building & Loan Association, with which the defendant purchased a home. The method of computing the amount claimed, $1,453.64, plus interest, is set forth in the margin.[1] The district court's jurisdiction was based on 28 U.S. C. § 1345, and this appeal on 28 U.S.C. § 1291.

Appellant insists that in reality there was no "loss" to the government,

"* * * because the lender has the right of conveying the property to the appellee, and did so convey it. The appellee may then sell the property and wipe out any 'loss' that may have existed." [Appellant's Brief, p. 3.]

Appellant offered to prove below that because the Veterans Administrator acquired the property from the Building & Loan Association for a total price of $7,047.50 and sold it for a net of $6,631.-88, it had suffered a loss of $415.62 only. This offer was refused and, error is claimed in that refusal.

The amount mentioned, $415.62, argues appellant, is the true amount of the government's loss, and the government should not be allowed to profit under an act designed to give relief "to members of the Armed Forces of limited means who honorably served their country during World War II." Appellant further urges that the Regulation with respect to indemnity (38 C.F.R. § 4323(e)) is inconsistent with the Act itself, and that this action is one for a deficiency judgment and hence void under § 580b of the West's Ann.Code of Civil Procedure of the State of California.

1. The loan was made August 7, 1947, in the sum of $6,750, plus 4% interest. Defendant had applied for and received the "Loan Guaranty Certificate," whereby the United States Veterans Administration had guaranteed 50% of the loan to the Building & Loan Association. Default occurred on September 1, 1947 and continued thereafter. The Building & Loan Association elected to foreclose on November 26, 1947, and so notified the Veterans Administrator, and on December 4, 1947, "the Veterans Administrator notified the defendant by registered mail that any sums paid out by the Administrator in satisfaction of a claim under the guarantee of the defendant's loan would constitute a debt owing by the defendant to the United States Government." (Finding of Fact V.)

In January 1948 the Building & Loan Association claimed one-half the principal, or $3,375.00. This was paid by the Veterans Administrator. The Building & Loan Association proceeded to publish and record its Notice of Election to Sell the real property securing the loan. The Veterans Administrator had the property appraised at $6,171.00 as "liquidation" value, "not reasonable value"; fixed an "upset price" of $5,500.00; and authorized the trustee's sale, subject to such upset price. The property was bid in by the Building & Loan Association for $5,500.

After crediting the $3,375.00 received from the government, the Building & Loan Association's balance due from the defendant was $3,578.64. After crediting the sale of $5,500.00, the excess of $1,-921.36 was turned over by the Association to the Veterans Administrator who applied it against the $3,375.00 he had paid for the defendant, leaving a loss of $1,453.64 for which this suit was filed, together with interest at 4% from May 18, 1948.

This recital follows the Findings of the district court which also found these various steps were taken pursuant to the Servicemen's Readjustment Act of 1944, as amended, and the Code of Federal Regulations, 1946 Supplement, Title 38, Sections 36.4230 to 36.4323, inclusive; and Sec. 4323(e). The present appeal is on an Agreed Statement (pursuant to Rule 76, Federal Rules of Civil Procedure, 28 U.S.C.) which adopts the district court's Findings.

Counsel for appellant's argument refuses to recognize the effect of his client's signature on Veterans Administration Form 4–1820, Home Loan Report, whereby the signer applied to the Veterans Administration for a *guarantee* of 50% of his loan, and that the Loan Guarantee Certificate (V.A. Form 4–1899) was thereafter issued, liability being assumed thereunder.

▉ As the government aptly replies to this position:

"In establishing the Veterans Administration's program of home loan guarantees for veterans, the Servicemen's Readjustment Act of 1944, 38 U.S.C. 693 et seq., expressly authorizes the Administrator of Veterans Affairs to promulgate such rules and regulations as are necessary and appropriate to carry out the provisons (sic) of the Act. 38 U.S.C. § 694d. Pursuant to this statutory authority, the Administrator has provided by regulation that '[a]ny amounts paid by the Administrator on account of the liabilities of any veteran guaranteed or insured under the provisions of the act shall constitute a debt owing to the United States by such veteran.' 38 C.F.R. (1949 ed.) 36.4323(e). This regulation was published in the Federal Register on March 1, 1946 (11 F.R. 2123); it was incorporated by reference into defendant's application for a loan guarantee, and unless inconsistent with the statute, was binding upon him. Federal Crop Ins. v. Merrill, 332 U.S. 380 [68 S.Ct. 1, 9 L.Ed. 10]; United States v. Zazove, 334 U.S. 602 [68 S.Ct. 1284, 92 L.Ed. 1601].

"*1. The regulation requiring indemnity is valid.* It is, of course, well settled that a regulation promulgated by an agency charged with the duty of administering a statutory program is entitled to great weight, and can be overturned only if it is clearly inconsistent with the statutory intent. Norwegian Nitrogen [Products] Co. v. United States,

288 U.S. 294, 315 [53 S.Ct. 350, 77 L.Ed. 796]. * * *

"*2. The regulation is binding upon defendant.* * * * [E]very court which has considered the problem has ruled that the United States is entitled to full indemnity under the Act and regulation. Thus, the three federal courts which have published decisions upon this question, as well as the court below, have unanimously agreed that the regulation places a veteran under an independent and enforceable obligation to indemnify the United States for any losses incurred as the result of a loan guarantee under the statute. United States v. Gallardo [D.C.N.D. Cal.], 154 F.Supp. 373; United States v. Jones [D.C.M.D.Ga.], 155 F.Supp. 52; United States v. Henderson [D.C.S.D.Iowa], 121 F.Supp. 343. As stated in the Henderson decision (121 F.Supp. at [page] 344):

'The language of this provision [38 C.F.R. 36.323(e), supra] is clear and there can be no question therefrom of the intent of the Congress to make any payments made by the Government under the guarantee of the Act an enforceable demand until full satisfaction is obtained. * * * Defendant's liability, created when his loan application was made out and the note and mortgage executed, remains a direct and subsisting obligation until the Government has been repaid.' " [Appellee's Brief, pp. 10–11, 23, 25–26.]

There was a finding below that the facts of this case establish that defendant herein was sued on his independent contract of indemnity and not for any deficiency judgment. We need not determine whether West's Ann. California Code of Civil Procedure, § 580b does or does not apply. Cf. In re Wilton-Maxfield Management Co., 9 Cir., 1941, 117 F.2d 913; Bank of America Nat. Trust & Savings Ass'n v. Hunter, 1937, 8 Cal.2d 592, 67 P.2d 99, and Security-First National Bank of Los Angeles v. Chapman, 1940, 41 Cal.App.2d 219, 106 P.2d 431, cited

by appellee, deal with a different section (§ 580a).

■ We rely on the general proposition that the subject matter of this litigation arises under the federal law and cannot be impaired by a state statute. Cf. Wissner v. Wissner, 1950, 338 U.S. 655, 659, 70 S.Ct. 398, 94 L.Ed. 424; Royal Indemnity Co. v. United States, 1941, 313 U.S. 289, 61 S.Ct. 995, 85 L. Ed. 1361; Pack v. United States, 9 Cir., 1949, 176 F.2d 770, 771.

Appellant's counsel refuses secondly to realize that in determining the government's loss occasioned by the actions of his client in defaulting his loan, there must be somewhere a line of demarcation —a time when the government can seek from the indemnitor what its loss has been fairly established to be by a definite and uniform rule, free from the vagaries of rising and falling real estate markets.[2]

■ Under settled principles of indemnity law, the guarantor's loss is fixed at the time of the trustee's sale. The subsequent events on which defendant here relies can neither decrease nor increase the extent of his obligation to indemnify.

Suppose the Building & Loan Association had held the property after the trustee's sale and sold it one or five years later at a huge profit. Would the defendant have any right to the profits? Obviously not; nor any liability were there a sale at a loss.

Defendant argues, however, that in computing the government's loss, the following additional facts must be considered: The lender, instead of exercising its option of retaining the house and remitting to the Veterans Administration the unused portion of the $3,375.00, chose to tender the house itself to the Veterans Administration which the Veterans Administration was obliged to accept at the established upset price of $5,500 (38 C.F.R. § 36.4320(b)). Since the lender already had in its possession the $1,921.36 which was to be credited to the Veterans Administration as the balance of its payment of $3,375.00, the Veterans Administration then made payment to the holder of the balance of the $5,500.00 (together with certain further incidental costs). Defendant, pointing out that the Veterans Administration thus acquired the house for a total cost of $7,047.50, sought to prove that the Veterans Administration sold the house for a net price of $6,631.88, thereby suffering a loss on the whole transaction of only $415.62, instead of $1,453.64 as found by the district court. The district court rejected defendant's offer to prove these additional facts, as not material to a determination of his liability of indemnity.

■ Again we follow apt language in appellee's brief. It is a settled principle of mortgage law that the value of the mortgagor's equity in the mortgaged property is fixed by the amount bid at the foreclosure sale, and accordingly that, in the absence of fraud, a mortgagor has no right to compel a mortgagee to account to him for any profit made upon a subsequent resale of the premises. General Auto Truck Co. v. Rust, 1936, 66 App.D.C. 392, 88 F.2d 774; Ramsden v. Keene Five Cents Savings Bank, 8 Cir., 1912, 198 F. 807; Pennsylvania Ave. Federal Savings & Loan Ass'n v. Fedder, 1938, 175 Md. 127, 199 A. 785, 117 A.L.R. 858; Gehlert v. Smiley, Mo. 1938, 114 S.W.2d 1029; South Amboy Trust Co. v. McMichael Holdings, Inc., 1947, 141 N.J.Eq. 12, 56 A.2d 437. The deficiency on a mortgage is determined by the foreclosure sale and is not reduced by an advantageous resale. Berman v. One Forty-Five Belmont Ave.

2. Suppose, for example, the loss were not to be reckoned with until the whole series of events ends. Suppose the new purchaser from the government defaults, and payment cannot be obtained from him. Suppose such default takes place at the end of fifteen years of the twenty year purchase price mortgage. Must the government wait until such event before it can proceed against the appellant herein?

Corp., 1931, 109 N.J.Eq. 256, 156 A. 830, 832.

 The liability of the guarantor of the mortgage is likewise fixed by the foreclosure sale, and he too has no right to a reduction of his liability to the mortgagee for a deficiency on foreclosure if the mortgagee makes a profit on reselling the property, 24 Am.Jur., Guaranty § 123, p. 955. And by the same token, the liability of the mortgagor to his guarantor for any deficiency obviously also is fixed by the amount received at the foreclosure sale; *a fortiori* where a guarantor subsequently acquires the mortgage property, he has no obligation to account to the mortgagor for any profit made in reselling it. Pennsylvania Ave. Federal Savings & Loan Association v. Fedder, supra; United States v. Jones, D.C.M.D. Ga.1957, 155 F.Supp. 52.

In the Jones case, supra, the court disposed of precisely such a contention with the following language:

"But as I see it, whether or not the Veterans Administration has made a profit as a result of its purchase of this property from the Reconstruction Finance Corporation, or whether it should make such profit in the future is immaterial to the present inquiry. The plaintiff's loss on its guaranty agreement was determined when the foreclosure sale occurred and resulted in a deficit of $865.23 and when the payee of the note demanded and received payment from the Veterans Administration of said sum. If the Veterans Administration should incur an additional loss by reason of its purchase of the property from the purchaser at the foreclosure sale it could hardly be said that as guarantor it could recover from the defendant such additional loss in addition to the $865.-23 sued for. Likewise, it would not be responsible to the defendant for any profit on such subsequent and independent transaction. See in this connection, 38 C.J.S. Guaranty § 111, page 1298; 24 Am.Jur., page

875, Guaranty, Section 4, page 955, Guaranty, Section 123; 59 C.J.S. Mortgages §§ 518, 599, pages 848, 1044; 37 Am.Jur., page 188, Mortgages, Section 783." 155 F.Supp. at page 56.

Finding no error, the judgment of the district court is affirmed.