John FITZGERALD, et al.,
Plaintiffs, Appellants,

v.

Max CLELAND, et al., Defendants,
Appellees.

No. 80–1662.

United States Court of Appeals,
First Circuit.

Argued April 10, 1981.

Decided June 4, 1981.

Howard T. Reben, Portland, Me., with whom Sunenblick, Fontaine & Reben, Portland, Me., was on brief, for appellants.

Paula D. Silsby, Asst. U. S. Atty., Portland, Me., with whom Thomas E. Delahanty, II, U. S. Atty., Portland, Me., was on brief, for appellee Max Cleland.

George P. Limberis, Bangor, Me., with whom Limberis & Limberis, Bangor, Me., was on brief, for appellee Philip Singer.

Before ALDRICH, CAMPBELL and BREYER, Circuit Judges.

BREYER, Circuit Judge.

Appellants borrowed money from the Bangor (Maine) Savings Bank and gave the Bank a mortgage on their property. The Veterans' Administration (VA) guaranteed the loan under the provisions of 38 U.S.C. §§ 1810–1819 and 38 C.F.R. §§ 36.4300–36.4364. Appellants defaulted on the loan in 1974. In early February 1975 the VA decided not to include them in a special refunding program.

The Bank initiated foreclosure proceedings on March 24, 1975, by having a sheriff serve appellants personally with notice of foreclosure. Under Me.Rev.Stat. tit. XIV, § 6203(2), this notice starts a one-year "redemption" period running, at the end of which a mortgagor loses his interest in his

property if he has not arranged for refinancing or paid the full amount due. About six weeks later, the Bank assigned its interest in the property to the VA in return for the VA's payment to it of the amount due on the mortgage. (*See* 38 U.S.C. § 1816, 38 C.F.R. § 36.4320(b)). The VA then informed appellants about how they could redeem their property, but after more time passed and appellants apparently refused reasonable offers to buy the property, the VA notified appellants that their "redemption" period had expired and title to the property vested in the VA. About three months later, the VA sold appellants' property at a price that realized the VA a profit of $15,277.66 over and above its payment of appellants' mortgage debt and other relevant expenses.

Appellants brought this suit seeking a declaration that the Maine foreclosure statute violates their constitutional right to due process, attacking various of the VA's actions as unconstitutional or outside of its statutory authority and seeking a return of the property, or, at least, of the $15,277.66 "profit" that the VA realized. The district court rejected all appellants' claims. 498 F.Supp. 341 (D.Me.1980).

■ The issues that appellants raise here were explored by the district court in depth and discussed at length in its opinion. Except as discussed below, we affirm the district court's judgment on the basis of that opinion. On the due process claim, we need not pass upon the court's discussion of state action for, as the court pointed out, the Maine foreclosure statute provides mortgagors with "due process" in any event. It does not allow a mortgagee to seize a mortgagor's property, *cf. Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972), but rather begins the running of a one-year redemption period during which time the mortgagor can obtain a judicial determination of any relevant issues in dispute. *See* Me.Rev.Stat. tit. XIV, §§ 6301 *et seq.*; *Gosselin v. Better Homes,* 256 A.2d 629 (Me.1969). Indeed, the Maine courts can toll the running of the redemption period while the judicial hearing takes place. *See*

*Gosselin v. Better Homes, supra.* The essential requirements of notice and hearing prior to a significant deprivation of property are met. *See Mitchell v. W. T. Grant Co.,* 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974).

The main point upon which we differ with the district court concerns the approximately $15,000 surplus, which the VA realized from the sale of appellants' property three months after foreclosure took effect in 1976. Contrary to the district court, we believe that the VA's authorizing statutes do not allow the retention of this money and that it must be returned to appellants.

Certainly, as a matter of equity it would seem unjust for a creditor to retain more from the sale of a security than the value of the underlying debt (plus relevant expenses). For this reason common law courts, and nearly all states, have recognized that surpluses that arise out of foreclosure sales must ordinarily be returned to the debtor, 3 R. Powell, *The Law of Real Property,* § 467 (1979); 4 American Law of Property § 16.10 (A. J. Casner ed. 1952); 55 Am.Jur.2d *Mortgages* § 930 (1971), and when foreclosure takes place through a court proceeding, the court ordinarily returns any surplus over and above the claims against the property to the debtor. 55 Am. Jur.2d *Mortgages* § 930 (1971); 59 CJS *Mortgages* § 799 (1955). The debtor's right to the surplus is an equitable right somewhat analogous to the creditor's legal right to proceed against the debtor for any deficiency in value—again, a right recognized in virtually every state. 3 R. Powell, *supra,* § 467; 4 American Law of Property § 16.-200; 55 Am.Jur.2d, *supra,* § 905. Thus, had the bank chosen to foreclose upon appellants' property through (1) a *judicial action,* or (2) a *foreclosure sale,* the surplus under Maine law, would belong to the debtor. The VA would have had no right to the surplus, for the VA obtained only the Bank's interest under the second sentence of 38 U.S.C. § 1816, which provides that (upon payment by the VA to the Bank of the outstanding debt) the VA shall "receive an assignment of the loan and security . . . ".

The Bank could not assign to the VA what it did not have.

The government argues, however, that this is a special case because the Bank (and then the VA) followed (3) the unusual Maine "*strict foreclosure*" procedure, under which notice and the passage of one year automatically pass title to the entire property, eradicating not only the mortgagor's equity of redemption, but also any right to a surplus of value. The government claims that the Bank passed this interest to the VA, and therefore appellants have no right to the surplus.

We note initially that we do not necessarily accept the government's interpretation of Maine law.[1] It is indeed true that dicta in *Pierce v. Northeast Bank of Westbrook*, 381 A.2d 667 (Me.1978) state that the mortgagee's interest in the property includes a right to surplus value. The facts of that case, however, show that at least some mortgagee banks return that surplus to the mortgagor and the case also shows that the Maine courts readily find waivers of any such right of retention. It is just conceivable that a court—looking hard for evidence of a waiver—could find one here in the Bank's transfer of its interest to the VA in return for payment of the loan obligation for, had the Bank wished to retain the surplus in the property's value, it would presumably have refused the VA's offer of payment, kept the property, and resold it at a later time. Moreover, Maine enacted a new statutory provision in 1975, Me.Rev. Stat. tit. XIV, § 6204–A, which the parties concede provides the mortgagor with any surplus of value over debt. That provision may well have applied to this foreclosure, which was not complete until after the statute became effective.

■ We need not decide this issue of Maine law, however, because we believe that, as a matter of federal law, the VA must return the surplus. The relevant stat- ute, 38 U.S.C. § 1816, allows the VA to obtain an "assignment of the loan and security", but it does not specifically state how the VA is to treat the security that it receives. Faced with this statutory silence, the Supreme Court has made clear that the VA can promulgate reasonable regulations which, for example, allow the VA to collect from the debtor any deficiency in the value of the security, and which override any state law to the contrary. *United States v. Shimer*, 367 U.S. 374, 377–86, 81 S.Ct. 1554, 1557–1562, 6 L.Ed.2d 908 (1961); *see also United States v. Wells*, 403 F.2d 596, 597–98 (5th Cir. 1968). And, those regulations are to be interpreted in light of traditional property law practices. *McKnight v. United States*, 259 F.2d 540, 545 (9th Cir. 1958); *United States v. Jones*, 155 F.Supp. 52, 56 (M.D.Ga.1957). Moreover, the loan guarantee act evinces an intent to treat veteran mortgagors favorably, not harshly. Indeed, the very next sentence in § 1816(a) begins by stating "[n]othing in this section shall preclude any forbearance for the benefit of the veteran . . . ." Thus, statutory authorization to "receive . . . security" implies an obligation to treat that security in accordance with ordinary property law principles—at least where those principles would prevent inequitably harsh treatment of veteran mortgagors and where the VA has not seen fit to publish regulations to the contrary. In this instance, since the statute *expressly* commands neither the holding of the surplus nor the return of the surplus and the VA has promulgated no rule,[2] one can infer an intent that ordinary property law principles apply—which favor the debtor—and that the VA must therefore return the surplus to appellants.

Neither *McKnight* nor *Jones* holds to the contrary. Both of those cases involved VA suits for deficiency judgments. Those courts held that the ordinary state law rule—that a foreclosure sale determines the amount owed by the deficiency debtor (and

---

1. Not surprisingly, Maine case law on the subject is sparse, for a mortgagor with a property the value of which exceeds the debt could ordinarily find refinancing or would sell the property and pay off the debt.

2. Absent congressional intent to the contrary, the VA remains free to promulgate such a rule.

the amount owed by the guarantor to the mortgagee)—applies to VA foreclosure sales as well. They went on to hold that *subsequent* sales, after the foreclosure sale, could not affect the amount of the deficiency. The reasoning of those courts suggests, if anything, that the rights of all parties are ordinarily determined as of the time of foreclosure and that, *mutatis mutandis*, appellants would have a right to the surplus of the value of their property less the relevant debt as of the date foreclosure took effect in March 1976.

Section 1824(c) of Title 38 does not require a contrary holding. That provision, which states that "the proceeds from ... the sale of property disposed of" shall be "deposited in the [Loan Guaranty Revolving] Fund", surely means "proceeds" to which the VA is entitled, excluding expenses and other legitimate claims against the property and its proceeds.

Of course, strictly speaking, the surplus to which the appellant is entitled is the value of the property less relevant VA payments and expenses *as of the date of foreclosure*. As *McKnight* holds, subsequent sales after foreclosure are irrelevant. 259 F.2d at 544. (In *McKnight* foreclosure took place through sale.) Thus, appellants are entitled to a surplus determined on the basis of March 1976 values. In this instance, however, the subsequent sale took place so soon thereafter it can be taken as setting the relevant values as of three months earlier. None of the parties claims that there was any sudden rise in the property's value.

We therefore hold that appellants are entitled to the $15,277.66 surplus,[3] with interest to run from August 4, 1980. The judgment of the district court is vacated to the extent that it is inconsistent with the foregoing, and the case is remanded for further proceedings consistent with this opinion.

*So ordered. No costs.*

---

**3.** The VA realized an additional $2,733.69 from the transaction, but, apparently, as a result of reselling the $50,000 note that it received when it sold the real property. *Fitzgerald v. Cleland,* 498 F.Supp. at 345. The record shows no connection between this $2,733.69 and the underlying value of the real property; hence we see no obligation on the VA's part to give up those funds.