**Roy GRANT and Cheryl Grant, Plaintiffs,**

v.

**The UNITED STATES DEPARTMENT OF VETERANS' AFFAIRS and Jesse Brown, Secretary of the United States Department of Veterans' Affairs, Defendants.**

Civ. A. No. H–93–350.

United States District Court, S.D. Texas.

July 26, 1993.

Carlos A. Peniche, Peniche & Singleton, Houston, TX, for plaintiffs.

Larry C. Marcy, U.S. Attys. Office, Houston, TX, for defendants.

### *MEMORANDUM AND ORDER*

CRONE, United States Magistrate Judge.

Pending before the court is Defendants United States Department of Veterans' Affairs and Jesse Brown's motion to dismiss (Docket Entry # 7). Defendants seek dismissal of Plaintiffs Roy Grant and Cheryl Grant's ("the Grants") original complaint. Alternatively, defendants seek summary judgment on the claims of plaintiffs.

Jurisdiction in this matter is proper under 28 U.S.C. § 1331. The parties consented to have a United States Magistrate Judge conduct all further proceedings in this case, including the trial and entry of judgment, pursuant to 28 U.S.C. § 636(c). The case was referred to the undersigned magistrate judge.

After review of the pending motion, the affidavits and memorandum of law submitted in support, the response, the pleadings, and the applicable law, this court finds that defendants' motion for summary judgment should be granted.

### I. *Background.*

The Grants bought a house located at 16123 Diamond Ridge, Missouri City, Texas, on May 1, 1986. The purchase of this house was financed by a $37,000.00 loan from Texas Western Mortgage Company. The Grants executed a note, secured by a deed of trust, in the amount of $37,000.00, payable to Texas Western Mortgage Company. The Veterans' Administration ("VA") provided a partial loan guaranty of sixty percent of the loan amount under the provisions of 38 U.S.C. §§ 1810–1819 (1986) and 38 C.F.R. §§ 36.4300–36.4364 (1985). Although the loan was freely assignable, the original borrowers remained liable unless they received a release of liability from the VA. 38 U.S.C. § 1817; 38 C.F.R. § 36.4323(f). Texas Western Mortgage Company subsequently assigned the note in due course to Mortgage Investment Corporation ("MICO").

On September 22, 1988, the Grants conveyed the house by a "General Warranty Deed with Assumption" to Hugo and Rosa Sanchez. In this transaction, the Sanchezes assumed the Grants' loan. The Grants, however, remained liable on the loan because they did not receive a release of liability from either MICO or the VA.

On June 1, 1990, the Sanchezes defaulted on the note by not making the monthly payment. On August 15, 1990, MICO sent a "Notice of Default" (VA Form 26–6850) to the VA, reporting that the amount of the default was $1,281.00 and the outstanding loan balance was $35,968.44. On September 21, 1990, MICO submitted to the VA a "Notice of Intention to Foreclose" indicating that foreclosure proceedings would be instituted on or after October 21, 1990. On December 17, 1990, MICO submitted to the VA a "Request for Determination of Reasonable Value" (VA Form 26–1805), and the VA ordered an appraisal by a private appraiser. The appraisal submitted to the VA estimated the "as is" market value of the house as of January 4, 1991, to be $32,000.00. The VA then instructed MICO to bid at least $28,-

678.00 at the foreclosure sale. This is known as either the "specified bid" or "upset price," which is the lowest bid that can be made at the foreclosure sale if the VA is to honor the loan guaranty.

On January 28, 1991, the VA notified the Grants of the loan default and their continuing liability. During this time, MICO gave the notice required under the deed of trust and TEX.PROP.CODE § 51.002 and accelerated the note. On February 5, 1991, MICO foreclosed the deed of trust lien on the property. At the foreclosure sale, MICO purchased the property for $28,678.00, this being the only bid.

On February 12, 1991, MICO submitted to the VA a "Notice for Election to Convey and/or Invoice for Transfer of Property" (VA Form 26–8903). This form certifies that the one submitting it is the holder of the property and is due the specified amount under the VA guaranty. The property is then conveyed to the VA for the specified amount.

The VA purchased the house from MICO for $39,448.98 on March 19, 1991. While in its possession, the VA incurred $6,775.38 in expenses for management of the property. The VA then sold the house through a sealed bid process on August 23, 1991, for $52,-000.00. The VA financed this sale, receiving a net gain on the transaction of $5,775.64.

The Grants contend that they are due the net gain that the VA realized on its sale of the property. They assert that they have made repeated requests for this amount and that the VA is wrongfully retaining it. Defendants contend that, because the net gain realized resulted from a sale subsequent to the foreclosure sale, the Grants are not entitled to it.

## II. *Analysis.*

### A. *Summary Judgment Standard.*

■ A summary judgment may be granted if the moving party establishes that there is "no genuine issue of material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); *Guthrie v. Tifco Indus.,* 941 F.2d 374,

376 (5th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1267, 117 L.Ed.2d 495 (1992). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby,* 477 U.S. at 255, 106 S.Ct. at 2514. To avoid a summary judgment, the nonmoving party must designate specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby,* 477 U.S. at 257, 106 S.Ct. at 2514; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Unsubstantiated assertions of an actual dispute will not suffice. *Celotex Corp. v. Catrett,* 477 U.S. at 323, 106 S.Ct. at 2553. The controverted evidence must be viewed in the light most favorable to the non-movant and all reasonable doubts must be resolved against the moving party. *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888, 110 S.Ct. 3177, 3188, 111 L.Ed.2d 695 (1990); *Anderson v. Liberty Lobby,* 477 U.S. at 255, 106 S.Ct. at 2514.

### B. *VA Procedures.*

The VA provides loan guaranties to qualified veterans. This provides the veteran with certain advantages over other financing methods, including a lower required downpayment, usually a more favorable interest rate, and limitations on the closing costs, charges and fees assessed the veteran. 38 U.S.C. § 1803(c); 38 C.F.R. §§ 36.4311–.4312. The VA's guaranty obligates it to reimburse the lender, up to a certain amount, upon default on the loan. 38 C.F.R. § 35.-4316.

Upon default on a VA-guaranteed loan, the lender must notify the VA of the default arising from nonpayment within forty-five days after sixty days have elapsed since the first date of nonpayment. 38 C.F.R. § 36.-4315. The VA then has two options. It may elect to receive an assignment of the loan and security or it may allow the lender to proceed according to VA regulations and foreclose on the property securing the loan. 38 U.S.C. § 1816.

If the VA elects to receive an assignment of the loan and security, it must pay the lender the unpaid balance of the obligation plus accrued interest as of the date of the assignment. 38 U.S.C. § 1816(b); 38 C.F.R. § 36.4318. Thus, the VA assumes the role of the lender and may choose to institute foreclosure proceedings or avoid foreclosure by forbearing on the veteran.

If the VA elects to allow the lender to institute foreclosure proceedings and the default remains in effect for three months, the lender must provide written notice to the VA of its intention to foreclose at least thirty days prior to the foreclosure. 38 C.F.R. §§ 4316(a), 4317. After the foreclosure sale, if the lender is the purchaser, it may generally convey the property purchased at the foreclosure sale to the VA for payment of the foreclosure bid plus the guaranty amount, including allowable expenses. 38 C.F.R. § 36.4320. From the evidence presented in the instant case, it appears that the VA exercised the second option, allowing the lender to foreclose the mortgage. It also appears that MICO timely gave the VA the notices required by VA regulations to permit the foreclosure sale to occur.

■ Home mortgage foreclosures of VA-guaranteed loans are conducted by the note and lien holder in accordance with the laws of the state in which the property is located. 38 U.S.C. § 1820(a)(6); 38 C.F.R. §§ 36.4319, 36.4320; *Rank v. Nimmo*, 677 F.2d 692, 697 (9th Cir.), *cert. denied*, 459 U.S. 907, 103 S.Ct. 210, 74 L.Ed.2d 168 (1982); *Jones v. Turnage*, 699 F.Supp. 795, 797 (N.D.Cal. 1988). Because the federal statutes and regulations are silent as to mortgage foreclosure proceedings and in light of mortgage foreclosures being a traditional state law concern, it is apparent that the VA Act was not intended to supplant the state law by authorizing the federal courts to create a federal common law of mortgages. *Rank v. Nimmo*, 677 F.2d at 697. Thus, the foreclosure of the instant mortgage is governed by Texas law.

### C. *Applicable Texas Law.*

In Texas, Tex.Prop.Code § 51.002 sets forth the procedure for conducting a nonjudicial foreclosure sale of real property. It specifies the requisite notice to be given the parties and the time at which a public foreclosure sale may be held. From the evidence presented, MICO, the lender, gave the proper notice and a valid foreclosure sale occurred. At the foreclosure sale, MICO purchased the property for $28,678.00. This amount was seventy percent of the market value, which was also the VA's specified bid.

■ Even if the Grants had contested the adequacy of the foreclosure bid, which they do not, a foreclosure sale cannot be invalidated based on inadequacy of price alone where there has been no irregularity in the foreclosure process. *Resolution Trust Corp. v. Westridge Court Joint Venture*, 815 S.W.2d 327, 330 (Tex.App.—Houston [1st Dist.] 1991, writ denied); *Thompson v. Chrysler First Bus. Credit*, 840 S.W.2d 25, 33 (Tex.App.—Dallas 1992, no writ). The VA obtained an independent appraisal within approximately one month of the foreclosure sale indicating the market value of the property to be $32,-000.00. The VA then instructed MICO to bid no less than $28,678.00, seventy percent of the market value. This alone does not indicate an inadequate price. Moreover, the Grants have shown nothing to indicate that there was an irregularity in the sale, causing the property to be sold for an inadequate price. Proper notices were given and the sale was timely according to the Texas statutes. Thus, the foreclosure sale was valid.

■ In Texas, upon a valid foreclosure sale, the mortgagee is entitled to a judgment against the mortgagor for the amount of the note, interest and attorney's fees, less the amount received at the foreclosure sale and other legitimate credits. *Resolution Trust Corp. v. Westridge Court*, 815 S.W.2d at 330; *Tarrant Sav. Ass'n v. Lucky Homes, Inc.*, 390 S.W.2d 473, 475 (Tex.1965). If, on the other hand, the foreclosure sale produces a surplus, the mortgagor is entitled to receive it. As in other states, the rights of the parties to a surplus or deficiency are determined as of the time of foreclosure. *See Fitzgerald v. Cleland*, 650 F.2d 360, 363 (1st Cir.1981); *McKnight v. United States*, 259 F.2d 540, 544 (9th Cir.1958). Thus, in the case at bar, the rights and liabilities of the

parties were determined on February 5, 1991, the foreclosure date. As of that date, the outstanding debt on the property, including interest and other allowable expenses, was $39,448.98. The amount received at the foreclosure sale was $28,678.00. Consequently, there was a net loss of $10,770.98, for which the Grants, the mortgagors, were liable to MICO, the mortgagee.

■ MICO advised the VA within fifteen days after the foreclosure sale of its election to convey or transfer the property as provided in 38 C.F.R. § 36.4320(a)(1) and conveyed the property it purchased at the foreclosure sale to the VA. The VA paid MICO $39,-448.98 and received the property, along with the right to collect on the net loss, or deficiency, owed by the Grants. This right to collect the deficiency arises through both subrogation and indemnification. 38 C.F.R. §§ 36.4323(a), 36.4323(e); *Jones v. Turnage,* 699 F.Supp. at 797. Thus, the Grants became liable to the VA for the deficiency produced as a result of the foreclosure of the mortgage.

### D. *The Grants' Claim.*

■ The Grants assert that they should be the beneficiaries of the subsequent sale of the property by the VA, the second conveyance after the foreclosure sale. It is well established, however, that sales subsequent to the foreclosure sale of property financed by a VA-guaranteed loan are simply irrelevant to the initial mortgagor's rights because the parties' rights are determined at the time of the foreclosure sale. *Fitzgerald v. Cleland,* 650 F.2d at 363; *McKnight v. United States,* 259 F.2d at 544; *United States v. Jones,* 155 F.Supp. 52, 56 (M.D.Ga.1957). Therefore, if the VA's subsequent sale had been for less than the amount tendered at the foreclosure sale plus allowable expenses, the VA could not then claim an increase in the deficiency owed by the mortgagor. Likewise, when the VA's subsequent sale realizes more than the amount tendered at the foreclosure sale plus allowable expenses, the mortgagor is not entitled to reduce any deficiency arising from the foreclosure sale or to the return of any "surplus" resulting from the subsequent sale. *McKnight v. United States,* 259 F.2d at 545; *United States v. Jones,* 155 F.Supp. at 56. Thus, the subsequent sale conducted by the VA has no bearing on the rights of the parties. In fact, although not claimed by defendants, the Grants appear to remain liable for the deficiency resulting from the foreclosure sale.

■ The Grants further contend that the VA, as a purchaser of the property from the initial purchaser at the foreclosure sale, obtained only limited rights in the property. Under Texas law, however, the purchaser at a valid foreclosure sale takes full and complete record title, free of all liens, as against the mortgagor of the property. *Jeffrey v. Bond,* 509 S.W.2d 563, 565 (Tex.1974); *Corn v. First Texas Joint Stock Land Bank of Houston,* 131 S.W.2d 752, 757 (Tex.Civ. App.—Fort Worth 1939, writ ref'd). Thus, MICO, the purchaser at the foreclosure sale, was entitled to convey the property to any subsequent purchasers, including the VA, free of any interest that the Grants may previously have had in the property.

The Grants cite *Fitzgerald v. Cleland,* 650 F.2d at 360, in support of their claim for the "surplus." *Fitzgerald,* however, is inapposite due to the different foreclosure procedures utilized and the specific role assumed by the VA in that situation. In *Fitzgerald,* the foreclosure process occurred according to Maine law, which permits a one-year redemption period. *Id.* at 360–361. Under this process, the mortgagor is served with a notice of default. *Id.* If the default remains uncured following the expiration of one year from the date of the notice, title to the property vests automatically in the mortgagee. *Id.* In *Fitzgerald,* the lender/mortgagee initiated the foreclosure proceeding by serving the mortgagor with a default notice, thus commencing the one-year redemption period. *Id.* About six weeks later, the lender/mortgagee, instead of foreclosing the mortgage itself and submitting a claim to the VA, assigned its interest (the loan and security) to the VA in return for payment of the outstanding loan amount. *Id.* at 361. Thus, the VA came to occupy the position of the lender/mortgagee, and remained in that role for forty-six weeks, at which time the foreclosure effectively occurred and title to the

mortgaged property vested directly in the VA. *Id.* Thus, there was no bid at foreclosure. The VA sold the property three months later, realizing a net gain of over $15,000. *Id.* However, because there was no appraisal or foreclosure bid setting the value of the property on the foreclosure date, which could be utilized to determine the parties' rights, the court deemed the value of the property on the foreclosure date to be equal to the consideration received in the sale occurring three months later. *Id.* at 363. The court simply assumed the reasonable value of the property on the foreclosure date and applied general principles of property law, finding a surplus upon foreclosure, which it ordered to be returned to the mortgagors. *Id.*

In the present case, there are two significant differences. First, the VA did not foreclose on the mortgagors. Of the two options available, the lender, MICO, elected to foreclose. Thus, the VA's subsequent payment of the required sums to acquire the property and the proceeds resulting from the later resale are irrelevant to the determination of the existence of a surplus or deficiency because the VA was not a party to the foreclosure process. Second, in the instant case, there was a foreclosure bid. Because the foreclosure bid is used to determine any deficiency or surplus, a value was set for the property in question at the foreclosure sale. Thus, unlike the court in *Fitzgerald*, this court has no occasion to determine the value of the property. The *Fitzgerald* court in fact acknowledged that the foreclosure sale is what determines the parties' rights and that "subsequent sales after foreclosure are irrelevant." *Id.* In this case, a deficiency, rather than a surplus, was generated at the foreclosure sale, and there are no excess funds arising out of the foreclosure process now payable to the Grants.

The Grants' position is also unsound from a policy standpoint. Under the Grants' scenario, the VA would be required to remit to the original mortgagors a "surplus" generated any time it sold property that initially was financed by a VA-guaranteed loan, even years after foreclosure by the lender. Because the mortgagors cannot be penalized for a subsequent decline in property values by being required to remit any additional "deficiency," they likewise should not benefit from subsequent, fortuitous increases in property values over the course of time. By guaranteeing a loan, the VA, and through it, the taxpayers, assume the risk of loss if the property's value declines and the deficiency is unrecoverable. Accordingly, the VA and the taxpayers should be entitled to benefit if the property's value ultimately rises. The financial vitality of the VA loan guaranty program, which exists for the benefit of all qualified veterans, is promoted by the VA's ability to offset its losses with subsequent gains on the sale of VA-managed property. If the VA were required to adopt the Grants' approach, the continued viability of the loan guaranty program likely would be jeopardized.

Therefore, because the Grants have set forth no facts showing that there was a surplus realized at the foreclosure sale or that they have any continuing rights in the property, their claim must fail.

### III. *Conclusion.*

This Court finds that there is no genuine issue of material fact as to the Grants' claim and defendants are entitled to judgment as a matter of law. Accordingly, summary judgment is GRANTED for the defendants.

### FINAL JUDGMENT

In accordance with the summary judgment granted in this case, the Court enters Final Judgment in favor of the United States Department of Veterans' Affairs and Jesse Brown. Roy and Cheryl Grant shall take nothing by their suit.

This is a FINAL JUDGMENT.