**Rose SUBIA, Plaintiff-Appellant,**

v.

**The COLORADO AND SOUTHERN RAILWAY COMPANY, Defendant-Appellee.**

**No. 77–1436.**

United States Court of Appeals, Tenth Circuit.

Submitted on the Briefs Oct. 11, 1977.

Decided Nov. 14, 1977.

Walter C. Brauer, III of Brauer & Simons, P.C., Denver, Colo., for plaintiff-appellant.

John L. Pilon, Denver, Colo., for defendant-appellee.

Before McWILLIAMS, BARRETT and DOYLE, Circuit Judges.

BARRETT, Circuit Judge.

Rose Subia (Subia) appeals from an adverse judgment following trial to the court. Subia, a Mexican American, brought this suit against her former employer, Colorado and Southern Railway Company (Compa-

ny), alleging a violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e, *et seq.*

Subia began working for Company as a calculator operator on February 6, 1969. The employment relationship between Subia and Company was governed by a collective bargaining agreement. Rule 25 of that agreement provided in part:

(a) Except in case of accident or sickness, an employee desiring to remain away from service must obtain permission from his superior officer.

(b) When the requirements of the service will permit, employees, on request, will be granted leave of absence not to exceed thirty (30) days with privilege of renewal. Except for physical disability as provided in paragraph (g) of this Rule, leave of absence in excess of ninety (90) days in any twelve (12) month period shall not be granted unless by agreement between the management and the duly accredited representative of the employees.

From June 22, 1970 through July 3, 1970 Subia was absent from work on a leave of absence she had taken in conjunction with her regular vacation so that she and her husband could visit with her mother-in-law in Texas who was quite ill at that time. Although scheduled to return to work on July 6, 1970, Subia failed to do so. On July 7, 1970 she requested a ninety (90) day leave of absence to tend to the needs of her mother-in-law, which included bringing her to Denver and establishing adequate medical care for her. Company denied Subia's request for an extended leave of absence. However, it did grant her an additional leave of one week, until July 13, 1970. At that time Company notified Subia that if she would resign immediately, she would be rehired for an available position upon her reapplication, after she had had an opportunity to tend to the needs of her mother-in-law.

Subia did not resign nor did she return to work as scheduled on July 13, 1970. On July 20, 1970, while she had still not returned to work, Subia was notified pursuant to the bargaining agreement that an investigation would be held on July 28, 1970, to determine the reasons for her absence from work without proper authorization since July 13, 1970. On July 23, 1970, ten days after the date that she was to have returned to work, Subia notified Company by letter that she still needed an extended leave of absence in excess of ninety (90) days and that she was therefore resigning. Subia did not request a continuance or postponement of the investigation into her unexcused absence from work from July 13 to July 23, 1970. However, in view of her resignation, the investigation was not held.

On December 28, 1970, at which time her old position was available, Subia reapplied for employment with the Company. Company refused to rehire Subia, citing to her unexcused absence from work without leave from July 13 to July 23, 1970. Thereafter, Subia filed a complaint of discrimination with the Colorado Civil Rights Commission.

On July 11, 1972 Subia's discrimination complaint came on for hearing before the Commission. Oral testimony was received, reported, and transcribed. On July 28, 1972 the hearing officer issued his "Findings of Fact, Conclusions, and Order" directing "that the within Complaint be dismissed for insufficient evidence to sustain the allegations therein." Upon review, the Commission adopted and concurred in the hearing examiner's findings and conclusions.

Subia filed the instant lawsuit on August 12, 1975. Trial was had to the court on March 31, 1977. At trial Subia contended that she was discriminated against because of her national origin in that Company discriminatorily refused her requested leave of absence and thereafter discriminatorily refused to rehire her. To expedite the trial the transcript of the July 11, 1972 proceeding before the hearing examiner was offered and received into evidence as a joint exhibit.

Subia testified that she was aware of others who had resigned and were later rehired and that Company discriminated against her in this respect solely because of her national origin. Company presented

evidence supportive of its contention that all leaves of absence, including Subia's, have been consistently controlled by Rule 25 of the bargaining agreement since its adoption on July 1, 1954. An employee of Company, who was Subia's supervisor, testified that, within the accounting department where Subia worked, there had been no exceptions made to the leave of absence rules during the last thirty years, and that whereas several employees had taken extended leaves, they had resigned prior to taking them.

In its judgment for Company, the trial court found that it had not acted improperly in declining to rehire Subia:

> . . . defendant has established that its refusal to consider plaintiff for rehire was motivated by legitimate business justifications. In support of this conclusion, the court notes that plaintiff was absent from her job from July 13, 1970 to July 23, 1970. During that time plaintiff did not communicate with defendant and did not apprise defendant of her intentions relevant to her employment.

> \* \* \* \* \* \*

> Upon defendant's showing of legitimate and nondiscriminatory reasons for its refusal to rehire, it was incumbent upon plaintiff to establish that these reasons were merely a pretext. Mrs. Subia, however, failed to meet this burden. There was evidence that the defendant had rehired other employees who had previously resigned from their jobs with defendant. However, these individuals had left the defendant's employ under substantially different circumstances, The fact that plaintiff absented herself from work without leave and prior to her resignation distinguishes her from these other workers who had all resigned prior to leaving their employment.

[R., Vol. I, pp. 18–19.]

The trial court also found that Rule 25 of the bargaining agreement controlled the manner in which leave was to be afforded employees and that Company did not discriminate against Subia by its application of the rule in processing her request for an extended leave. In finding that Subia had failed to make a prima facie showing of discrimination, relative to Company's refusal to grant her an extended leave, under the dictates of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the trial court noted:

> Mrs. Subia was simply not entitled to the leave she requested. The granting of leaves was governed by Rule 25 of the Union contract then in effect. That rule allowed for leaves of absence when the company's operational requirements permitted. In applying this union rule, each department developed its own set of guidelines consistent with the work requirements in that department. The guidelines for the department which employed plaintiff did not allow for granting leaves in excess of thirty days except for sickness, military obligations, education under the G.I. Bill and maternity. There was no evidence that defendant departed from these guidelines either in refusing plaintiff's request or in granting other individuals similar requests.

[R., Vol. I, p. 19.]

On appeal Subia contends that the trial court improperly concluded that Company adequately rebutted her prima facie showing of discrimination.

The trial court properly observed that under *McDonnell Douglas, supra,* Subia established a prima facie case of racial discrimination based on her national origin under Title VII for an alleged discriminatory refusal to rehire by showing (1) she belongs to a racial minority, (2) she applied for an available job and was qualified for that job, (3) that despite being qualified her application was rejected, and (4) that after the rejection the position remained open and Company continued to solicit applications for the job.

Subia does not take exception to the trial court's observation that once a prima facie showing of prejudice is made, "the burden then shifts to the employer to articulate some legitimate, nondiscriminatory reason for its refusal to rehire." Subia does take

exception, however, to the trial court's determination that Company adequately rebutted her prima facie case under *McDonnell Douglas, supra*, by establishing that its refusal to rehire her was motivated by legitimate business justifications, i. e., her unexcused absence from work from July 13, 1970 to July 23, 1970.

Subia argues that under *Jones v. Lee Way Motor Freight, Inc.*, 431 F.2d 245 (10th Cir. 1970), *cert. denied*, 401 U.S. 954, 91 S.Ct. 972, 28 L.Ed.2d 237 (1971), as followed by *Spurlock v. United Airlines*, 475 F.2d 216 (10th Cir. 1972), *Brito v. Zia Corp.*, 478 F.2d 1200 (10th Cir. 1973), and *Muller v. United States Steel Corp.*, 509 F.2d 923 (10th Cir. 1975), *cert. denied*, 423 U.S. 825, 96 S.Ct. 39, 46 L.Ed.2d 41 (1975), a defendant employer may overcome a prima facie showing of discrimination *only* by showing that its policy, demonstrated to have discriminatory effects, is "necessary to the safe and efficient operation of the business." Subia argues that Company did not establish that its refusal to grant her leave and subsequent refusal to rehire her were dictated as a matter of business necessity compelled by safety and efficiency. Subia further argues:

Analysis of Rose Subia's conduct suggests one leave period without permission. In actuality, this is no more than an unexcused absence. Whichever descriptive term is applied to her conduct, Rose Subia's actions are relatively minor. It is simply not logical to conclude that rehiring her when she is already trained is compelled by the Employer's need for efficiency. The harshness of the resignation and loss of many months of income seem more than sufficient discipline, if discipline is necessary for a first offense. To get any place close to the business necessity test would require a showing of repeated improper absences coupled with progressive discipline. The facts do not indicate any of this.

[Appellant's brief, p. 9.]

Subia does not advance any authority supportive of her argument, i. e., that her absence from work for ten days without permission, and without notifying her employer, is "relatively minor." Nor does Subia present cogent argument or authority supportive of her apparent allegation that Company's uniform practice of granting leaves was discriminatory.

■ Subia's cause of action herein simply "misses the mark." A prima facie showing of discrimination for refusal to rehire was established under *McDonnell Douglas, supra*. However, in the instant case, Company effectively established by sufficient evidence that Rule 25 has controlled the granting of leave since its effective date and that Subia was not rehired because of the manner in which she personally terminated her employment in 1970.

In the final analysis, the trial court properly found that whereas Subia made out a prima facie case, her case was fully rebutted by Company and that Subia was unable to show that Company's justifications for its actions were merely a pretext or that the actual refusal to grant leave or rehire was in fact motivated by racial animus. This is particularly true, when, as here, the record is completely devoid of any evidence indicating that Company was acting discriminatorily against Subia because of her national origin.

The primary purpose of Title VII was recently reiterated in *Teamsters v. United States*, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977) and bears repeating here:

The primary purpose of Title VII was "to assure equality of employment opportunities and to eliminate those discriminatory practices and devices which have fostered racially stratified job environments to the disadvantage of minority citizens." p. 348, 97 S.Ct. p. 1861.

The record before us is devoid of any substantial evidence indicating that Company utilized "discriminatory practices and devices" to foster a "racially stratified job environment" within the accounting department where Subia worked. Subia would have us strike down, as discriminatory, a leave policy negotiated by Company and her Union which had been in effect since 1954,

solely because of her national origin. She also asks this court to force an employer to rehire an employee who had absented herself from work without leave, solely because of that employee's national origin. Such was simply not the intent of Title VII or of the decisions construing it.

Although Subia made a prima facie showing of discrimination under the liberal standards of *McDonnell Douglas, supra,* her case ended at that point. Company clearly established a rational basis for its actions and it adequately rebutted Subia's prima facie showing. Thereafter, Subia not only failed to establish that Company had a specific intent to discriminate but she also failed to establish that Company's conduct produced discriminatory results.

Company's actions herein were commonsensed, based on a rational and neutral business justification. Pertinent hereto is the Court's observation in Footnote 21 of *McDonnell Douglas, supra* :

> It is, of course, a predictive evaluation, resistant to empirical proof, whether "an applicant's past participation in unlawful conduct directed at his prospective employer might indicate the applicant's lack of a responsible attitude toward performing work for that employer." *Green v. McDonnell Douglas Corp.,* 8 Cir., 463 F.2d, 337 at 353. But in this case, given the seriousness and harmful potential of respondent's participation in the "stall-in" and the accompanying inconvenience to other employees, it cannot be said that petitioner's refusal to employ lacked a rational and neutral business justification. As the Court has noted elsewhere: "Past conduct may well relate to present fitness; past loyalty may have a reasonable relationship to present and future trust." *Garner v. Los Angeles Board,* 341 U.S. 716, 720, 71 S.Ct. 909, 95 L.Ed. 1317 (1951).
> 411 U.S., at pp. 806–807, 93 S.Ct. at p. 1826.

This is particularly true when, as here, Company presented evidence of the necessity of a strict leave policy within the accounting department in order to maintain a continuity of work flow.

WE AFFIRM.