**Abraisto Vincent ROMERO, Plaintiff,**

v.

**UNION PACIFIC RAILROAD COMPANY, a corporation, United Transportation Union, and Association, and H. H. Brandt, R. B. Murdock, D. D. Sorenson, and A. L. Young, Defendants.**

**No. C78–029K.**

United States District Court,
D. Wyoming.

Oct. 19, 1978.

Patrick E. Hacker of Patrick E. Hacker & Associates, Cheyenne, Wyo., for plaintiff.

Frederick G. Loomis and Henry F. Bailey, Jr. of Loomis, Lazear, Wilson & Pickett, Cheyenne, Wyo., for defendants Union Pacific Railroad Company, H. H. Brandt, D. D. Sorenson, and A. L. Young.

Edwin H. Whitehead and Walter C. Urbigkit, Jr. of Urbigkit, Mackey & Whitehead, Cheyenne, Wyo., for defendants United Transportation Union, and Association and R. B. Murdock.

## MEMORANDUM OPINION

KERR, District Judge.

This is a Title VII action instituted under the provisions of 42 U.S.C. §§ 2000e–2, 2000e–3. The material facts are not in dispute and may be summarized as follows:

Plaintiff Abraisto Vincent Romero, a Mexican-American, became an employee of Union Pacific Railroad Company on October 9, 1975 as a laborer in the Laramie panel yards, Laramie, Wyoming. Upon entry into the service of the Railroad, plaintiff agreed in writing to obey all of the rules and regulations of Union Pacific Railroad Company, including the terms and conditions of the Collective Bargaining Agreement between Union Pacific Railroad Company and United Transportation Union.

General Rule B of Union Pacific Railroad Company provides, "Employees must be conversant with and obey the rules and special instructions. If in doubt as to their meaning, they must apply to proper authority of the railroad for an explanation." Rule G of Union Pacific Railroad Company provides, "The use of alcoholic beverages or narcotics by employees subject to duty is prohibited. Being under the influence of alcoholic beverages or narcotics while on duty or on company property is prohibited." Operating Rule 700 provides, "Employees will not be retained in service who are careless of the safety of themselves or others, insubordinate, dishonest, immoral, quarrelsome or otherwise vicious, or who do not conduct themselves in such a manner that the railroad will not be subjected to criticism and loss of good will, or who do not meet their personal obligations." Operating Rule 701 provides, "Courteous, orderly conduct is required of all employees. Boisterous, profane or vulgar language is forbidden."

On October 16, 1975, plaintiff transferred from the Maintenance of Way Department to Train Service as a brakeman-switchman and was employed as a brakeman-switchman from October 16, 1975 through April 9, 1976.

At approximately 4:45 a. m., Friday, April 9, 1976, in the Union Pacific Clubhouse at Rawlins, Wyoming, while under the influence of alcohol, subject to duty and on Company property, plaintiff was involved in a physical altercation with Mrs. Mary Lange, a maid employed at the Union Pacific Clubhouse.

As a result of the altercation with Mrs. Lange, plaintiff was arrested by Police Sergeant Zabel of the Rawlins Police Department and incarcerated in the Rawlins City Police jail, at which time he was given notice by R. J. Rairigh, Assistant Division Superintendent, that he was suspended from service pending the outcome of an investigation into possible violation of General Rules B, E, and G and Operating Rules 700 and 701.

On April 21, 1976, a formal investigation and hearing was conducted in the office of R. J. Rairigh in Cheyenne, Wyoming. Plaintiff was represented at that hearing by Dick Tritt, Local Chairman of the United Transportation Union, and K. P. Murphy, former Local Chairman.

Plaintiff admitted at the hearing being in violation of General Rule G and his Union representative, Tritt, issued a plea for leniency which in the railroad industry is tantamount to an admission of guilt of the rule violations charged.

The policy of Union Pacific Railroad Company pursuant to Company rules and regulations, as well as the Collective Bargaining Agreement between United Transportation Union and Union Pacific Railroad Company, is to dismiss employees from service of the Company following a violation of Rule G. The hearing officer, R. J. Rairigh, Assistant Superintendent, Wyoming, found, after reviewing the transcript of the formal investigation and hearing and considering the evidence, that plaintiff was guilty of violating General Rules B and G and Operating Rules, General Regulations 700 and 701. As a result of these findings, R. J. Rairigh ordered plaintiff dismissed from employment with Union Pacific Railroad Company.

Plaintiff had available to him the appeal procedures of Rule 84 of the Collective Bargaining Agreement between United Transportation Union and Union Pacific Railroad Company. Following an investigation and dismissal resulting from the investigation, an appeal from the decision is first filed with the Superintendent in writing within thirty days from the date of the decision.

An appeal from the Superintendent's decision goes to the General Manager, and an appeal from the General Manager goes to the National Railroad Adjustment Board. Plaintiff pursued those procedures on the division level and then on an appeal to General Manager Durant, at both stages admitting guilt in the form of a request for leniency reinstatement.

On April 27, 1976, plaintiff contacted Edward Engstrom, Employee Assistance counselor for the Wyoming Division, and voluntarily enrolled himself in the Employee Assistance Program of Union Pacific Railroad Company. Over 70% of the employees involved with the Employee Assistance Program have alcohol or drug related problems. The purpose of Employee Assistance is to rehabilitate employees and return them to active, productive service with the Company.

Although plaintiff pursued the first two steps in the administrative appeal process, he failed to pursue the final step, that is an appeal to the National Railroad Adjustment Board, and instead filed complaints with the Wyoming Fair Employment Commission (F.E.C.) and the Federal Equal Employment Opportunity Commission (E.E.O.C.) agencies without exhaustion of his administrative remedies under the National Railway Labor Act. In complaints before the F.E.C. and E.E.O.C. plaintiff did not name as respondents H. H. Brandt, D. D. Sorenson, A. L. Young or R. B. Murdock.

From April 21, 1976 through May 17, 1977, United Transportation Union made several requests for reinstatement of plaintiff. Upon receiving such a request for reinstatement, the General Manager, consistent with Company policy, solicited recommendations from D. D. Sorenson, Head of Employee Assistance, and the Superintendents of the Wyoming Division. According to Company policy, until recommendations unanimously favored reinstatement, plaintiff was kept out of service and required to work with Employee Assistance.

Procedures for reinstatement of plaintiff began on May 17, 1977 with a letter from R. B. Murdock, plaintiff's Union representa-

tive and General Chairman of the United Transportation Union for Union Pacific Eastern District, to H. H. Brandt, Union Pacific's General Manager for the Eastern District, followed by a letter of reinstatement issued on June 15, 1977, which was signed and agreed to by plaintiff on June 29, 1977, and which provided for reinstatement on a six month probationary status.

Plaintiff was out of service as a dismissed employee for 13½ months.

Others dismissed for Rule G violations and/or other rules are dismissed for similar periods of time. The average length of time out of service for Rule G first violation is one to one and a half years. The following individuals before the Court in the affidavit submitted by plaintiff's attorney in support of plaintiff's opposition to defendants' Motions for Summary Judgment substantiate that plaintiff was not treated more severely or given any greater punishment than Anglo employees similarly dismissed for Rule G violation.

(a) E. F. Finnerty dismissed 2/6/73, third violation, reinstated 10/1/76, or a total of 43 months out of service.

(b) R. S. Cable dismissed 11/11/75, first offense, reinstated 8/10/76, or a total of nine months out of service.

(c) G. R. Hayes dismissed 12/9/75, first offense, reinstated 8/27/76, or a total of nine months out of service.

(d) F. L. Copiac dismissed 2/1/74, first offense, reinstated 12/17/75, or a total of 22 months out of service.

On December 22, 1977, consistent with the policy of Union Pacific Railroad Company and the procedure used in other Rule G cases, plaintiff was reinstated on a permanent basis with full seniority as of his original seniority date, November 3, 1975.

This case was heard on the following motions submitted by defendants Union Pacific Railroad Company, United Transportation Union, H. H. Brandt, R. B. Murdock, D. D. Sorenson, and A. L. Young:

(a) Motion to Dismiss, Motion for Summary Judgment, Motion to Strike, Supplemental Motion to Dismiss and Strike, and Second Supplemental Motion to Dismiss and Strike, submitted by defendants Union Pacific Railroad Company, H. H. Brandt, D. D. Sorenson and A. L. Young.

(b) Motion for Summary Judgment and Motion to Dismiss and Strike submitted by United Transportation Union and R. B. Murdock.

All of the various motions filed in this case shall be treated as one for summary judgment and disposed of as provided in Rule 56 and Rule 12(b) of the Federal Rules of Civil Procedure.

Rule 56 of the Federal Rules of Civil Procedure fixes the standard by which to determine whether a summary judgment should be granted. Subsection (c) of Rule 56 provides: "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The obvious function and purpose of summary judgment is to avoid a useless trial. *Broadway v. City of Montgomery, Alabama*, 530 F.2d 657 (5th Cir. 1976). The summary judgment procedure prescribed in Rule 56 is a procedural device for promptly disposing of actions in which there is no genuine issue of any material fact. In many cases no such issue exists even though an issue has been raised by formal pleadings. Justice Cardozo once stated: "The very object of a motion for summary judgment is to separate what is formal or pretended in denial or averment from what is genuine and substantial, so that only the latter may subject a suitor to the burden of a trial." *Richard v. Credit Suisse*, 242 N.Y. 346, 152 N.E. 110 (1926). To avoid unnecessary expense and delay which oftentimes accompany a trial, the rule permits a party to pierce the allegations of fact in the pleadings and to obtain relief by summary judgment where facts set forth in detail in affidavits, depositions, answers to interrogatories and admissions on file show that there are no genuine issues of material fact

to be tried. *Redhouse v. Quality Ford Sales, Inc.*, 511 F.2d 230, (10th Cir. 1975).

■ "When a summary judgment movant makes a convincing showing that genuine issues of fact are lacking, the adversary must adequately demonstrate by receivable facts that a real, not formal, controversy exists." *United States v. Jones*, 155 F.Supp. 52 (M.D. of Ga.1957).

■ The determination of what constitutes a "genuine issue as to any material fact" is often difficult. It has been said that a genuine issue is one which can be maintained by substantial evidence. A mere scintilla of evidence is not enough to create an issue; there must be evidence on which a jury might rely. An issue is material if the facts alleged are such as to constitute legal defenses, or are of a nature so as to affect the result of the action, or the issue is so essential that the party against whom it is resolved may not prevail. Wright and Miller, Federal Practice and Procedure, Volume 10, § 2725.

■ In cases involving discriminatory employment practices, the general principles of summary judgment apply. If no genuine issues of fact are present, summary judgment may be granted. Because of the complexity of the factual situations ordinarily surrounding a discrimination charge, summary judgment and disposition of such cases is rare; however, it certainly is available, especially in situations where the facts clearly illustrate genuine factual issues do not exist. Several cases have allowed employer's requests for summary judgment: (1) *Brennan v. Reynolds & Company*, 367 F.Supp. 440 (N.D.Ill.1973), where the Court held that it would not substitute its judgment for management's judgment where valid reasons for discharge of the employee existed. The Court said that, in situations where the employee could be discharged lawfully regardless of the intent of the employer, management's decision should be upheld. (2) In *Shoonfield v. The Mayor and City Council of Baltimore*, 399 F.Supp. 1068 (Md.1975), the Court held that facts must show intent or motivation and plaintiff can-

not merely rely on allegations in his Complaint to establish that genuine issues of fact do exist. The purpose of summary judgment is to pierce the pleadings and, therefore, when the defendant comes forward with facts showing no intent, plaintiff must bring forth rebuttal evidence at least sufficient to show that a genuine issue does exist. (3) *Colon v. State of New York, Division of Human Rights*, 354 F.Supp. 343 (S.D.N.Y.1973), employer's request for summary judgment upheld in an action alleging discrimination because of national origin.

The crux of plaintiff's Complaint is his charge of retaliation by the company for his pursuit of statutory rights designed to protect him in his status as a minority.

It has been said in a number of cases that the process of proof in employment retaliation cases should follow the general pattern laid out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the cornerstone decision relating to equal employment opportunities. See, *Brown v. Rollins, Inc.*, 397 F.Supp. 571 (W.D.N.C.1974); *EEOC v. Kallir, Phillips, Ross, Inc.*, 401 F.Supp. 66, 70 (S.D.N.Y. 1975); *Hochstadt v. Worcester Foundation For Experimental Biology*, 545 F.2d 222 (1st Cir. 1976).

■ This pattern, adopted to a retaliation case, would be as follows: The plaintiff first has the burden of proving a prima facie case of retaliation. In making a prima facie case, the plaintiff must not only show the protected employee activity and the discharge, but also that the discharge followed the protected activities within such a period of time that the Court can infer retaliatory motivation.

■ The plaintiff must prove not only the protected activity and the discharge, but the causal relation between them. The defendant must prove not only that he had a legitimate, non-discriminatory reason for the discharge, but also that he had no retaliatory motivation. Only if this is done does the burden shift to the plaintiff to prove pretextuality. In simplest terms, the question is whether the same disciplinary action

would have occurred had there been no participation in statutory proceedings. If the answer is yes, the retaliation case fails. *McFadden v. Baltimore S. S. Trade Association*, 352 F.Supp. 403, 412 (D.Md.1973), affirmed 483 F.2d 452 (4th Cir. 1973).

■ It is asserted that the plaintiff has not carried his burden. The plaintiff has not shown that a prima facie case of retaliation exists. From the facts, it is clear that the disciplinary action was not a result of plaintiff's Complaint. The reason for discharge was that Company rules were violated. Plaintiff attacked a woman on Company property while under the influence of alcohol. There was a potential of great risk to other individuals and property if the plaintiff was retained in service. The reason plaintiff was not rehired when he felt he should have been was because he did not fully cooperate in the Employee Assistance Program and the severity of the rules violations required complete rehabilitation and assurances that further activities of this sort would not result. Clearly, the disciplinary action would have occurred irregardless of plaintiff's pursuit of statutory remedies.

The facts also show that the length of time the plaintiff was discharged was not disproportionately greater than other employees discharged under similar circumstances. Further, the facts do not indicate the causal connection between protected activity and acts of alleged retaliation.

Plaintiff alleges retaliation as early as August, 1976 and yet there is absolutely no basis in fact for that allegation. He had only been out of service for four months at that time, much less than for usual suspensions in Rule G violations. Plaintiff's activities before the Wyoming Commission began in October of 1976, approximately six months after his discharge and three months prior to the E.E.O.C. filing. Therefore, the Railroad would have been aware of Mr. Romero's activities in opposing what he felt to be discriminatory practices. The Railroad was aware of this information a significant amount of time prior to plaintiff's filing of the E.E.O.C. charge in December of 1976.

In *Griggs v. Duke Power Company*, 401 U.S. 424, 431, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971), the Supreme Court held that the "touchstone" of the Equal Employment Opportunity Act is "business necessity". If a particular action on the part of an employer can be shown to relate to job performance, it is not then prohibited. In this case, we do not have a situation in which a legitimate business practice was aimed at innocent or innocuous behavior on the part of an employee; rather we have a situation in which dangerous, violent behavior and an inability of plaintiff to control himself while drinking could well have resulted in serious injury to others as well as Company property.

A recent Tenth Circuit case, *Subia v. Colorado and Southern Railway Company*, 565 F.2d 659 (1977), a case similar to the one we have here, citing *McDonnell Douglas*, supra, found that "past conduct may well relate to present fitness." *Subia* at 663. Certainly there can be no question that plaintiff's conduct presented a situation where the Company had to decide whether he was fit for service. Management determined that he was not fit for service and instead presented a very high risk of danger to himself and to other individuals working for the Company. This was a valid business judgment based upon a valid business policy and was in no way related to plaintiff's national origin or any filing of complaints or charges. *Subia* went on to hold that the business necessity doctrine does not require a showing that a rule or regulation is essential and necessary to the safety and efficiency of the Company, but rather that it was merely related to a valid business policy.

■ In treating a motion for summary judgment, the court must be convinced that the issue is not genuine, but feigned, and that there is in truth nothing to be tried. The decision of the Fourth Circuit in *Zoby v. American Fidelity Co.*, 242 F.2d 76, 80 (4th Cir. 1957) applies in the instant case:

748

"It is well settled, however, that to resist a motion for summary judgment, the party against whom it is sought must present some evidence to indicate that the facts are in dispute, where the moving party's evidence has shown otherwise; and . . . the record reveals no such evidence. His bare contention that the issue is disputable will not suffice."

Inasmuch as there is no genuine issue as to any material fact and defendant is entitled to a judgment as a matter of law, accordingly, an Order will be entered granting defendants' Motion for Summary Judgment.